UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERGIO ESPINOSA SR. and SERGIO ESPINOSA JR., <br><br> Plaintiffs <br><br> v. <br><br> ANDREW C. METCALF d/b/a JUDGMENT ACQUISITIONS UNLIMITED, CHAMPION FUNDING, INC. and EXPORT ENTERPRISES INC., <br><br> Defendants. | Case No. 21-cv-10356-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                              **December 1, 2021**

**I.    Introduction**

Plaintiffs Sergio Espinosa Sr. and Sergio Espinosa Jr. (collectively, the "Espinosas") have filed this lawsuit against Andrew C. Metcalf ("Metcalf") d/b/a Judgment Acquisitions Unlimited ("JAU"), Champion Funding, Inc. ("Champion") and Export Enterprises Inc. ("Export") (collectively, "Defendants") alleging violations of the Fair Debt Collection Practices Act ("FDCPA") codified at 15 U.S.C. § 1692 *et seq.* (Counts I, II, III, IV, VI, VII and VIII), violations of Mass. Gen. L. c. 93 and 93A (Counts V and IX) and conversion (Count X) arising from an attempted debt collection. D. 13. Export now moves to dismiss. D. 18. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Export's motion.

1

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

The following factual allegations in the Espinosas' amended complaint, D. 13, are accepted as true for consideration of the motion to dismiss.

In 2006, Champion obtained a judgment against Sergio Espinosa Sr. ("Senior") for a credit card debt he incurred for the purchase of personal and household items.  D. 13 ¶¶ 25–27.  At the time, Senior's son Sergio Espinosa Jr. ("Junior") was still a minor.  Id. ¶ 30.  Junior had no connection to the credit card debt or related judgment.  Id. ¶ 29.

At some point, Champion hired Metcalf and his company JAU to collect on the 2006 judgment.  Id. ¶ 31.  Metcalf and JAU use the mail, telephone or facsimile in a business the principal purpose of which is the collection of judgments and debts owed to another.  Id. ¶¶ 11, 13.  Metcalf and JAU in turn hired and arranged for Export to seize Senior's personal property to

2

satisfy the 2006 judgment.  Id. ¶ 32.  "Upon information and belief," Export "uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debt and the enforcement of security interests, namely the repossession of vehicles by secured lenders." Id. ¶ 21.  Also "[u]pon information and belief," Export "also regularly collects, or attempts to collect, debts owed or due another, by seizing vehicles, boats and other assets in order to collect on outstanding judgments owed to other creditors and debt collectors."  Id. ¶ 22.

Senior and Junior live together in Dracut, Massachusetts at a private residence owned by Senior and rented in part by Junior (the "Espinosa Residence").  Id. ¶¶ 33–34.  On September 22, 2020, at approximately 3:30 a.m., the Espinosas awoke to the sound of a truck in their driveway. Id. ¶ 35.  Junior went outside and saw Defendants attempting to tow his Mini Cooper vehicle from the driveway.  Id. ¶ 36.  As the person moving the vehicle was securing it, Junior confronted the individual—identified as an employee of Export—and advised him that he had no right to tow the vehicle.  Id. ¶¶ 37–38.  Defendants claimed they had a right to seize the vehicle and drove off with it.  Id. ¶ 39.

The next day, Junior contacted JAU and spoke with Metcalf, advising him that they had no right to take his vehicle and that they had taken the wrong car since Junior had no connection to the 2006 judgment obtained against Senior.  Id. ¶ 40.  Metcalf responded to Junior "you are lying," "I deal with liars everyday" and that the Mini Cooper was in fact registered to Senior.  Id. ¶ 41. The Mini Cooper was, however, registered to Junior, not Senior, who leases a Honda Accord through Honda Financial.  Id. ¶¶ 42–43.

Even after being advised that they had seized the wrong vehicle, JAU and Metcalf told Junior that they would "settle" for $4,000 and that Junior would need to pay $3,000 of that sum within twenty-four hours if he wanted his Mini Cooper back.  Id. ¶ 44.  Further, Junior was advised

3

that an attorney named Michael Zola ("Zola") was representing JAU in connection with the judgment enforcement proceedings. Id. ¶ 45. Junior spoke with Zola, who advised Junior to offer Metcalf $4,000 to resolve Senior's debt. Id. ¶ 46. Junior emailed Zola on September 24, 2020 to demand the immediate return of the Mini Cooper, stating that his vehicle was wrongfully taken, that he had no connection to Senior's debt and that he was only fifteen years old when the 2006 judgment entered against Senior. Id. ¶ 47. Junior further advised Zola that his ownership of the Mini Cooper could be verified through correspondence with the bank that provided him a loan for the vehicle, which Junior attached to the email, or by reference to the registration located in the vehicle's glove compartment. Id. ¶¶ 47–48.

Metcalf, JAU and Export refused to return Junior's Mini Cooper over the next sixteen days. Id. ¶ 49. On October 9, 2020, Export returned Junior's car to the Espinosa Residence and immediately towed Senior's leased Honda Accord. Id. ¶ 52. The Espinosas and Honda Financial repeatedly advised Defendants that they could not legally seize the Honda Accord since Senior does not own the vehicle but instead leases it and provided Defendants with a copy of the lease. Id. ¶¶ 53–54. Defendants refused to return Senior's vehicle unless he paid thousands of dollars in storage fees. Id. ¶ 55. As of the amended complaint's filing, Defendants continued to possess the Honda Accord. Id. ¶ 56.[1]

## IV. Procedural History

The Espinosas commenced this action on March 3, 2021, D. 1, and filed an amended complaint on April 19, 2021, D. 13. Export now moves to dismiss. D. 18. The Court heard the parties on the pending motion and took the matter under advisement. D. 26.

---

[1] The Espinosas' opposition notes that Defendants later towed the Honda Accord back to the Espinosa Residence on May 1, 2021. See D. 20 at 6 n.1.

V.     Discussion

    A.     <u>**Fair Debt Collection Practices Act (Counts I, II, III, IV, VI, VII and VIII)**</u>

        1.     *"Debt Collector" Under the FDCPA*

The Espinosas allege several violations of the FDCPA, which provides a private right of action against "debt collector[s]" who violate the act's provisions, <u>see</u> 15 U.S.C. § 1692k.  In moving to dismiss all counts based on the FDCPA, Export argues that it is not a "debt collector" as defined by statute and, therefore, cannot be held liable under the FDCPA.  D. 18 at 4–6.  Section 1692a defines "debtor collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Additionally, "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  <u>Id.</u>  Export argues that its principal business purpose is not to collect debt but rather to provide towing and storage services.  D. 18 at 4.

While the First Circuit has not addressed whether a repossession company may qualify as a "debt collector" under the FDCPA, at least six circuit courts have concluded that "a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)."  <u>See</u> <u>Kaltenbach v. Richards</u>, 464 F.3d 524, 527 (5th Cir. 2006); <u>Burnett v. Mortg. Elec. Registration Sys., Inc.</u>, 706 F.3d 1231, 1236 (10th Cir. 2013); <u>Ausar-El ex rel. Small, Jr. v. BAC (Bank of Am.) Home Loans Servicing LP</u>, 448 F. App'x 1, 2 (11th Cir. 2011); <u>Piper v. Portnoff L. Assocs., Ltd.</u>, 396 F.3d 227, 236 (3d Cir. 2005); <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 700–01 (6th Cir. 2003) (dismissing

towing company because plaintiff did not allege violation of Section 1692f(6)); James v. Ford Motor Credit Co., 47 F.3d 961, 962 (8th Cir. 1995); Goodwin v. His Choice Towing & Recovery, LLC, No. 1:17-CV-753-MLB-LTW, 2019 WL 1212119, at *9 (N.D. Ga. Jan. 14, 2019), report and recommendation adopted, No. 1:17-CV-00753, 2019 WL 7944075, at *3 (N.D. Ga. Dec. 3, 2019) (explaining that "[c]ourts have uniformly agreed that while repossession agencies are not generally considered to be debt collectors, repossession agencies qualify as debt collectors under Section 1692f(6) where they are enforcing a security interest"); see also Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232–33 (D. Mass. 2011) (noting this distinction in concluding that "foreclosing entity" could not be held liable under the general provision of Section 1692f "because it was not collecting a debt but rather enforcing a security interest).

Many of these circuit court decisions cite Jordan v. Kent Recovery Servs., Inc., 731 F. Supp. 652, 656–57 (D. Del. 1990), which undertook a comprehensive analysis on this issue.  As Jordan explained, "the FDCPA refers to those who enforce security interests, such as repossession agencies, in the same section of the statute which defines 'debt collector,'" id., and states that, for the purpose of Section 1692f(6), the term "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," id. (quoting 15 U.S.C. § 1692a(6)).  Jordan concluded that this language "indicates that the term 'debt collector' also includes an enforcer of a security interest for purposes of § 1692f(6)."  Id. at 657 (emphasis omitted).  "Such a purposeful inclusion for one section of the FDCPA," however, "implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA."  Id. (citing Russello v. United States, 464 U.S. 16, 23 (1983) (stating that "where Congress includes particular language in one section of a statute but omits it in another section of the same [a]ct, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion" (citation and internal quotation marks omitted))). Jordan also examined Section 1692f(6) itself, which relates to the repossession of property, as well as the statute's legislative history. See id. at 657–58 (explaining how Congress "sought to proscribe the conduct of repossession agencies which have 'no present right to the possession of the property claimed'" but "leave unregulated those who enforce security interests when a 'present right' to the collateral exists" (quoting 15 U.S.C. § 1692f(6)). Given Jordan's reasoned analysis and the consensus among circuit courts that have considered the issue, this Court reaches the same conclusion "that the FDCPA does not restrict the conduct of repossession agencies, except in § 1692f(6)." See id. at 659.

Here, the Espinosas attempt to construe Export's towing business as having "the collection of debt" as its principal purpose. D. 13 ¶ 21. The amended complaint, however, does not plausibly allege that Export engages in activities relating to debt collection other than the "repossession of vehicles by secured lenders" or "seizing [of] vehicles, boats and other assets in order to collect on outstanding judgments owed to other creditors and debt collectors." See id. ¶¶ 21–22. Export, therefore, constitutes an entity "whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector" and is "subject only to § 1692f(6)." See Kaltenbach, 464 F.3d at 527. The Espinosas' citation to Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1720 (2017), does not warrant a different conclusion. See D. 20 at 4, 7. Henson noted that "[e]veryone agrees that the term [debt collector] embraces the repo man—someone hired by a creditor to collect an outstanding debt." Id. There, however, the Court was distinguishing "someone hired by a creditor to collect an outstanding debt" from someone who "purchase[s] a debt and then tr[ies] to collect it for [him]self," see id., as opposed to the distinction made under the definition of a "debt collector" 15 U.S.C. § 1692a(6) solely for

7

the purpose of Section 1692f(6), the issue here.

Export does not appear to dispute that "the principal purpose of [Export's business] is the enforcement of security interests." See 15 U.S.C. § 1692a(6). Export's memorandum on multiple occasions refers to its "seiz[ure]" of the Espinosas' vehicles "to satisfy the debt held" by Champion. See, e.g., D. 18 at 4, 10–11. Further, at the motion hearing, D. 26, counsel for Export requested that the Court take judicial notice of Export's articles of incorporation, seeking to show that its principal business purpose is not the collection of debt. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (noting susceptibility of "official public records" to judicial notice at motion to dismiss stage). Those articles describe Export's "type of business" as "[a]cquiring assets and liabilities."[2] At a minimum, these public records do not alter the conclusion that Export's principal business purpose is to enforce security interests.

Counsel for Export also argued at the motion hearing that In re Petralia, 559 B.R. 275, 286 (Bankr. D. Mass. 2016), precludes finding that a towing company may constitute a "debt collector" under the FDCPA. There, the bankruptcy court determined that the defendant towing company was not a "debt collector" because it "acted to collect its own $472 debt for towing and storage fees incurred." Id. Petralia appeared to assume that the towing company's principal business purpose was not debt collection and rested its conclusion on the latter part of the general definition of "debt collector," which relates to entities who regularly collect "debts owed or due or asserted

---

[2] See Commonwealth of Massachusetts, Articles of Organization, URT Export Enterprises, Inc. (Apr. 19, 2017), https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchRedirector.aspx?Action=PDF&Path=CORP_DRIVE1/2017/0419/001209082/0001/201733473220_1.pdf (last visited Dec. 1, 2021); see also Commonwealth of Massachusetts, Articles of Amendment, URT Export Enterprises, Inc. (June 22, 2017), https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchRedirector.aspx?Action=PDF&Path=CORP_DRIVE1/2017/0622/001224081/0001/201741108770_1.pdf (last visited Dec. 1, 2021) (amending corporate name to "Export Enterprises of MA, Inc.").

to be owed or due another." See id.; 15 U.S.C. § 1692a(6). Because the towing company was acting to collect its own debt, it failed to fall within that category. See Petralia, 559 B.R. at 286. Contrary to Export's argument, however, Petralia did not conclude that a towing company may never qualify as a "debt collector" under the FDCPA. To the extent Petralia conflicts with the decisions cited above concluding that a repossession company may constitute a "debt collector" for purposes of Section 1692f(6), this Court declines to adopt what appears to be a minority position.

For these reasons, Export may be subject to Section 1692f(6) of the FDCPA but not to any other section of the statute. Accordingly, Export's motion to dismiss Counts II, III, IV, VII and VIII—all of which relate to other FDCPA provisions—is ALLOWED. Because the Espinosas adequately plead that Export is a "debt collector" for purposes of Section 1692f(6), the Court may consider whether Counts I and VI allege plausible violations of that provision.

    2.    *Section 1692f(6) (Counts I and VI)*

Section 1692f of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Subsection (6), in relevant part, prohibits debt collectors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" "(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest" or "(C) the property is exempt by law from such dispossession or disablement." Id. § 1692f(6).

Export relies upon two grounds for dismissal of Counts I and VI. First, Export argues that the amended complaint fails to plead that Export made any threat to take property. D. 18 at 5–6. Subsection (6), however, lists both "[t]aking" and "threatening to take" "nonjudicial action to effect dispossession or disablement of property" as prohibited acts under certain specified

conditions. See 15 U.S.C. § 1692f(6). The amended complaint alleges that Export took property to enforce the 2006 judgment against Senior by seizing Junior's Mini Cooper and Senior's leased Honda Accord. D. 13 ¶¶ 39, 52, 61, 116, 124.

Second, Export argues that the Espinosas fail adequately to plead that the personal property seized by Export was exempt by law from dispossession. D. 18 at 6; see 15 U.S.C. § 1692f(6)(C). The amended complaint, however, alleges several facts plausibly suggesting that both vehicles were exempt from dispossession, see D. 13 ¶¶ 67, 122, 128, 130, as well as that Export lacked present right to possess either vehicle, see id. ¶¶ 61, 116, 121, 129; 15 U.S.C. § 1692f(6)(A). Specifically, the Espinosas allege that Junior's vehicle was "exempt from dispossession as he is not responsible to pay for Senior's debt" and that "Senior's vehicle was not subject to seizure, because it was not property owned by Senior, as it was a leased vehicle actually owned by Honda Financial." D. 13 ¶¶ 67, 128.

As the Espinosas point out, D. 20 at 9 n.3, under Massachusetts law, "[a]ll property which by common law is liable to be taken on execution, may be taken and sold thereon, except as otherwise expressly provided." Mass. Gen. L. c. 235, § 31. The Espinosas argue that this provision does not encompass property possessed under lease, as it is "the principle of the common law . . . that no property but that in which the debtor has a legal title is liable to be taken by . . . execution." See Van Ness v. Hyatt, 38 U.S. 294, 298, 301 (1839) (holding that judgment debtor who had leased property with conditional right to purchase had no interest liable to execution). For all of these reasons, Espinosas have adequately stated a claim for relief under subsection (6).

Accordingly, Export's motion to dismiss Counts I and VI is DENIED.

10

B.     **Chapter 93A (Counts V and IX)**

The Espinosas allege that Export engaged in unfair and deceptive acts and practices in violation of Chapter 93A, specifically through violations of 940 C.M.R. § 7.07 and of Mass. Gen. L. c. 93, § 49.  See Koonce v. Aldo Realty Tr., 8 Mass. App. Ct. 199, 201 (1979) (stating that violation of Mass. Gen. L. c. 93, § 49 is actionable under Chapter 93A).

1.     *Per Se* Violation

The Espinosas assert that Export *per se* violated Chapter 93A by virtue of its alleged violations of the FDCPA.  See D. 20 at 13–14.  "[A] violation of the FDCPA . . . constitutes a *per se* Chapter 93A violation."  McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 123 (1st Cir. 2014).

Export argues that it cannot be liable under Chapter 93A because it did not engage in "trade or commerce" with the Espinosas.  D. 18 at 7–8; see Mass. Gen. L. c. 93A, § 2 (prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce").  To support its argument Export relies upon three cases: Petralia, 559 B.R. at 291, Foreign Car Center, Inc. v. Essex Process Service, Inc., 62 Mass. App. Ct. 806, 814–15 (2005), and Cady v. Marcella, 49 Mass. App. Ct. 334, 343 (2000).  These cases stand for the proposition that when a sheriff or creditor seizes a debtor's property there exists no "trade or commerce" between the parties sufficient to sustain a Chapter 93A claim.  See, e.g., Cady, 49 Mass. App. Ct. at 343 (concluding that "[t]here was no conduct of trade or commerce" between debtors and the sheriff who seized their property).

When, however, a defendant engages in conduct going beyond mere seizure, courts consider the requisite "trade or commerce" to exist.  Andrews distinguished Cady and Foreign Car Center, stating that "[i]n those cases, the conduct complained of was the simple seizure of vehicles,

11

and the court concluded that the act of seizing property did not constitute trade or commerce under [Chapter] 93A." Andrews, 582 F. Supp. 2d at 90. Unlike Andrews, neither of those cases "involved claims that the defendants had engaged in conduct which went beyond seizure and violated the FDCPA." Id.; see id. at 86 (describing defendant's post-seizure actions of pressuring plaintiff to pay fees to have car released and threatening to sell car at auction). Moreover, Petralia adopted the reasoning of Andrews and dismissed the plaintiff's Chapter 93A claim for reasons unrelated to a lack of "trade or commerce." See Petralia, 559 B.R. at 291.

Here, the Espinosas have alleged facts exceeding mere seizure. The allegations against Export include refusing to return Junior's Mini Cooper for over two weeks despite being advised that it had no right to seize the vehicle, D. 13 ¶¶ 38, 49, and refusing to return Senior's leased Honda Accord unless Senior paid thousands of dollars in storage fees despite being advised that the vehicle could not be used to satisfy a judgment, id. ¶¶ 53–55. Because these facts sufficiently allege that Export "engaged in conduct which went beyond seizure and violated the FDCPA," see Andrews, 582 F. Supp. 2d at 90, Export's motion to dismiss this claim on the grounds that existed no conduct of "trade or commerce" fails.

Further, Export suggests that it cannot be held liable under Chapter 93A for violating the FDPCA because it does not qualify as a "debt collector." See D. 18 at 9–10. As concluded above, however, the Espinosas adequately plead that Export is a "debt collector" for purposes of Section 1692f(6) of the FDCPA and that Export violated that provision. For all these reasons, the Espinosas sufficiently allege a *per se* violation of Chapter 93A. See McDermott, 775 F.3d at 123; Andrews, 582 F. Supp. 2d at 89.

>    2.   940 C.M.R. § 7.07

The Espinosas also allege violations of several provisions of Chapter 93A's implementing regulations at 940 C.M.R. § 7.07, which defines specific debt collection practices considered to be unfair or deceptive. See D. 13 ¶ 163 (citing 940 C.M.R. § 7.07(8), (10), (16), (18), (19)).

As a preliminary matter, Export argues that it cannot be liable under these regulations, which are directed at "creditor[s]." See D. 18 at 10. The regulations define "creditor" as "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor and shall also include a buyer of delinquent debt who hires a third party or an attorney to collect such debt" but not "if his or her activities are solely for the purpose of serving legal process on another person in connection with the judicial enforcement of a debt." 940 C.M.R. § 7.03. Export contends that its conduct falls under the exception for "person[s]" whose "activities are solely for the purpose of serving legal process." See D. 18 at 10. Nothing in the amended complaint, however, suggests that Export is a process server, see D. 13 ¶¶ 21–22 (describing Export's business). Further, the definition of "creditor" includes "agents" and "servants" of creditors, which would encompass Export allegedly acting on behalf of Champion, Metcalf and JAU. See id. ¶¶ 31–32 (alleging that Metcalf and JAU "hired" Export); see Andrews, 582 F. Supp. 2d at 89 (denying motion to dismiss because plaintiff "alleged that the defendants were acting as agents of [creditor] in collecting the judgment debt, and therefore, would qualify as creditors under the regulations"). Export, therefore, plausibly qualifies as a "creditor" and may be liable under the provisions of 940 C.M.R. § 7.07 invoked by the Espinosas, which the Court now addresses.

Section 7.07(8) prohibits "[a]ny false, deceptive, or misleading representation, communication, or means in connection with the collection of any debt." 940 C.M.R. § 7.07(8).

13

Section 7.07(10) further prohibits "[a]ny false or misleading representation or implication that the debtor committed any crime or other conduct in order to disgrace the debtor." Id. 7.07(10). Export argues that the amended complaint fails to plead that Export made any such communications. See D. 18 at 9. Nevertheless, the amended complaint alleges that "Defendants" threatened to sell Senior's leased Honda Accord even after learning that he did not own the vehicle to induce him to pay thousands of dollars in storage fees. See D. 13 ¶¶ 55, 154. This allegation encompasses Export, one of Defendants, and therefore provides a reasonable inference that Export is liable for violating Section 7.07(8) as to Senior. Further, the amended complaint alleges that "Defendants . . . drove off with the Mini Cooper owned by Junior, after claiming that they had a right to seize the vehicle." D. 13 ¶ 39; see id. ¶ 90. This claim against Defendants plausibly constitutes a false, deceptive or misleading representation intended to induce Junior to allow Defendants to take his vehicle despite that they had no such right. The amended complaint therefore also establishes a reasonable inference that Export is liable for violating Section 7.07(8) as to Junior. Although the amended complaint does not appear to allege facts to support a claim against Export under Section 7.07(10), see generally D. 13, it has done so as to Section 7.07(8).

Section 7.07(16) prohibits "[t]he collection of any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 940 C.M.R. § 7.07(16). Export argues that the amended complaint fails to plead any facts to support a violation of this provision. D. 18 at 10. In response, the Espinosas note the allegation that Defendants demanded Senior pay thousands of dollars in storage fees for the months they held his leased vehicle. See D. 20 at 18 (citing D. 13 ¶ 55). This allegation suggests a plausible violation of Section 7.07(16), as the Court can

reasonably infer that the storage fees were not expressly authorized by the agreement creating the underlying debt or otherwise permitted by law.

Section 7.07(18), in relevant part, prohibits "[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property if" "(a) there is no present right to possession of the property claimed as collateral through a court order or an enforceable security interest" or "(d) the property is . . . exempt by law from such dispossession or disablement." 940 C.M.R. § 7.07(18). Section 7.07(19) prohibits "[t]aking possession of . . . property that is exempt from seizure on execution because . . . the property is otherwise exempt by law from such dispossession or disablement." Id. 7.07(19). Because the prohibition in Section 7.07(18) mirrors that of 15 U.S.C. § 1692f(6), Export refers to the Court to its arguments for dismissal with respect to Section 1692f(6). See D. 18 at 9. Further, Export generally argues that the amended complaint fails to plead facts to support a violation of Section 7.07(19). See id. at 10. Export's arguments fail for the reasons stated above relating to 15 U.S.C. § 1692f(6). In particular, the Espinosas allege several facts plausibly suggesting that Junior's Mini Cooper and Senior's leased Honda Accord were exempt from dispossession. See D. 13 ¶¶ 67, 122, 128, 130. These allegations support violations of Section 7.07(18) and (19).

Accordingly, the Espinosas adequately plead various violations of Section 7.07(8) *et seq.*

3.   *Mass. Gen. L. c. 93, § 49*

Under Chapter 93, Section 49, "[n]o one who is a creditor . . . or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." Mass. Gen. L. c. 93, § 49. Export's sole argument challenging liability under this section is that it is not a "creditor." See D. 18 at 11. As concluded above,

15

however, Export satisfies the regulatory definition of "creditor," which encompass "agents" and "servants" of creditors. See 940 C.M.R. § 7.03. Additionally, the amended complaint alleges that Senior incurred the debt leading to the 2006 judgment against him using a credit card solely for the purchase of personal and household items. D. 13 ¶¶ 25–27. Moreover, the Espinosas adequately plead several violations of 940 C.M.R. § 7.07, which defines specific debt collection practices considered to be unfair or deceptive. The Espinosas, therefore, plausibly suggest a violation of Chapter 93, § 49.

Because the Espinosas adequately plead a *per se* violation of Chapter 93A, violations of 940 C.M.R. § 7.07 and a violation of Chapter 93, Section 49, Export's motion to dismiss Counts V and IX is DENIED.

C.  **Conversion (Count X)**

The Espinosas claim that Export is liable for conversion due to its alleged seizure of Junior's Mini Cooper and Senior's leased Honda Accord. See D. 13 ¶¶ 169–78. To establish a claim for conversion, a plaintiff must prove that the defendant "exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment." In re Hilson, 448 Mass. 603, 611 (2007). The plaintiff must show actual possession, Mass. Lubricant Corp. v. Socony-Vacuum Oil Co., 305 Mass. 269, 271 (1940), or a right to immediate possession of the property, Mazeikis v. Sidlauskas, 346 Mass. 539, 544 (1963) (citing MacNeil v. Hazelton, 306 Mass. 366, 367 (1940)). A defendant may not defend against an action for an intentional tort against property by asserting legal title in a third person. See New England Box Co. v. C & R Const. Co., 313 Mass. 696, 707–08 (1943) (stating that "any possession is a legal possession against a wrong-doer").

Export relies upon three grounds for dismissal of the conversion claim. First, Export argues that Senior was not the "rightful owner" of the Honda Accord as he merely leased the vehicle, which Honda Financial owned. D. 18 at 11. Export further argues that even assuming Senior was the vehicle's "rightful owner" he cannot show an immediate right to possession because Export seized the vehicle pursuant to a valid judgment. Id. Senior, however, had both actual possession of the Honda Accord at the time Export seized it, as it was parked in his private driveway, D. 13 ¶ 52, and the right to immediate possession of the vehicle by virtue of his lease agreement with Honda Financial, id. ¶¶ 53–54. Export cannot defend against liability by asserting legal title to the vehicle in Honda Financial. See New England Box Co., 313 Mass. at 707–08.

Second, Export argues that it seized the vehicles at issue "at the request of Constable Metcalf" and cannot be held liable for acting at the direction of law enforcement. D. 18 at 11–12. Nothing in the amended complaint, however, indicates that Metcalf is a "[c]onstable" entitled to immunity. See generally D. 13. Moreover, Metcalf himself admits in his answer to the amended complaint that he is engaged in "a business the principal purpose of which is the collection of judgments and debts owed to another." See D. 17 ¶ 11; D. 13 ¶ 11. As the Court must accept all factual allegations as true, Export's argument in this respect fails.

Third, Export argues that it cannot be liable for seizing Junior's Mini Cooper because a bailee or agent is not liable for conversion if he lacked knowledge that his bailor is not the true owner of the property. D. 18 at 12 (citing Gurley v. Armstead, 148 Mass. 267, 268 (1889)). Further, Export asserts that the Espinosas "fail to plead that [Export] had any knowledge or reason to know that [Champion] was converting [Junior's] property." Id. The amended complaint, however, pleads sufficient facts to suggest that Export knew or should have known that it lacked the right to seize Junior's Mini Cooper. See D. 13 ¶¶ 37–38 (alleging that Junior confronted the

person seizing his vehicle—"identified as an employee of Export Enterprises"—and advised the individual that they had no right to tow the vehicle); id. ¶ 61 (stating that Defendants seized Junior's vehicle "even after Junior expressly told them that they were taking the wrong car").

Accordingly, Export's motion to dismiss Count X is DENIED.

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Export's motion to dismiss, D. 18.  Counts II, III, IV, VII and VIII are dismissed against Export.  Counts I, V, VI, IX and X against Export remain.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge