**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SERGIO ESPINOSA SR. and SERGIO ESPINOSA JR.,**<br><br>        **Plaintiffs,**<br><br>        **-against-**<br><br>**ANDREW C. METCALF d/b/a JUDGMENT ACQUISITIONS UNLIMITED, CHAMPION FUNDING, INC., EXPORT ENTERPRISES INC., MASSACHUSETTS CONSTABLE INC., d/b/a MASSACHUSETTS CONSTABLES OFFICE and BRIAN ABELLI,**<br><br>        **Defendants.** | **Civil Case Number:**<br>**1:21-cv-10356-DJC**<br><br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:**     **(732) 695-3282**
**Fax:**       **(732) 298-6256**
*Attorney for the Plaintiffs*
*Sergio Espinosa, Sr. and Sergio Espinosa, Jr.*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT……………………………………..……..………..1

II.     FACTUAL BACKGROUND…………………………………..……………………..2

III.    STANDARD OF REVIEW TO BE APPLIED TO PLAINTIFFS'
        MOTION FOR SUMMARY JUDGMENT……………………..…………………....4

IV.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR
        FDCPA CLAIMS AGAINST THE METCALF DEFENDANTS…………………..5

        A.  Plaintiffs Have Established Each Element Of Their
            FDCPA Claims………………………………………………………………6

        B.  Metcalf, Champion and JAU Violated The FDCPA By Seizing
            And Holding Junior's Mini Cooper………………………………………7

        C.  Defendants Violated The FDCPA By Seizing And Holding Senior's
            Honda Accord………………………………………………………………10

V.      PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR
        STATE LAW CLAIMS AGAINST CHAMPION, METCALF AND JAU,
        ABELLI, THE MCO AND EXPORT…………………………………………..11

VI.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR
        CONVERSION CLAIMS AGAINST CHAMPION, METCALF, JAU, ABELLI
        THE MCO AND EXPORT………………………………………………………..16

VII.    CONCLUSION………………………………………………………………18

**TABLE OF AUTHORITIES**

*Andrews v. S. Coast Legal Servs., Inc.*,
582 F. Supp. 2d 82 (D. Mass. 2008)……………………………………………………14

*Barbato v. Greystone All., LLC*,
916 F.3d 260 (3d Cir. 2019)…………………………………………………………..7

*Borges ex rel. S.M.B.W. v. Serrano-Isern*,
605 F.3d 1 (1st Cir. 2010)……………………………………………………………..5

*Cady v. Marcella*,
49 Mass. App. Ct. 334, 729 N.E.2d 1125 (2000)……………………………………15

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)……………………………...5

*Davis v. Midland Funding, LLC*,
41 F. Supp. 3d 919 (E.D. Cal. 2014)…………………………………………………8

*DeNovellis v. Shalala*,
124 F.3d 298 (1st Cir. 1997)…………………………………………………………4

*Espinosa v. Metcalf*,
No. 21-CV-10356-DJC, 2021 WL 5639809 (D. Mass. Dec. 1, 2021)……………10, 14, 16

*Glowacki v. Law Offices of Howard Lee Schiff, P.C.*,
2014 WL 2547919 (D. Mass. June 5, 2014)…………………………………………6

*Harrington v. CACV of Colorado, LLC*,
508 F. Supp. 2d 128 (D. Mass. 2007)………………………...………………………8, 9

*Hebert v. Vantage Travel Serv., Inc.*,
No. 17-CV-10922-DJC, 2021 WL 2516076 (D. Mass. June 18, 2021)…………………12

*In re Hilson*,
448 Mass. 603, 863 N.E.2d 483 (2007)……………………………………………16

*In re Petralia*,
559 B.R. 275 (Bankr. D. Mass. 2016)………………….……………………………9, 10

*Kelly v. Dubrow*,
2001 WL 287490 (Mass.App.Div. Mar.20, 2001)…………………………………16

*Kelley v. LaForce*,
288 F.3d 1 (1st Cir. 2002)……………………………………………………...16

*Lannan v. Levy & White,*
    186 F. Supp. 3d 77 (D. Mass. 2016)……………………………………………………..6

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871, 110 S.Ct. 3177 (1990)………………………………………………………5

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.,*
    775 F.3d 109 (1st Cir. 2014)…………………………………………………………...14

*O'Connor v. Nantucket Bank,*
    992 F. Supp. 2d 24 (D. Mass. 2014)……………………………………………………6

*Pettway v. Harmon Law Offices, P.C.,*
    2005 WL 2365331 (D. Mass. Sept. 27, 2005)……………………………………6, 9

*Reygadas v. DNF Assocs., LLC,*
    982 F.3d 1119 (8th Cir. 2020)…………………………………………………………...7

*Som v. Daniels Law Offices, P.C.,*
    573 F.Supp.2d 349 (D. Mass. 2008)……………………………………………………6

*Swanson v. Southern Oregon Credit Serv., Inc.,*
    869 F.2d 1222 (9th Cir.1988)………………………………………………………...5

*Van Ness v. Hyatt,*
    38 U.S. 13 Pet. 294, 298, 301, 10 L.Ed. 168 (1839)………………………………………11

*Weiner v. Rushmore Loan Mgmt. Servs., LLC,*
    424 F. Supp. 3d 163 (D. Mass. 2019)……………………………………………………6

Statutes and Other Sources

15 U.S.C. § 1692a(5)…………………………………………………………………..6

15 U.S.C. § 1692a(6)…………………………………………………………………...7

15 U.S.C. § 1692f…………………………………………………………………………7

15 U.S.C. § 1692f(6)(C)………………………………………………………………..7, 8

940 Mass. Reg. 3.16……………………………………………………………………...12

940 Mass. Code Regs. 7.07……………………………………………………………….12

Fed. R. Civ. P. 56(c)……………………………………………………………………...5

Mass. Gen. Laws ch. 93A………………………………………………………………..12

Mass. Gen. Laws ch. 93, § 49……………………………………………………………12

Mass. Gen. Laws ch. 93, § 49, cl. 7…………………………………………………………12

Mass. Gen. Laws ch. 235, § 35………………………………………………………...15

S. Rep. No. 95–382 (1977)……………………………………………………………...5

## I.      PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the Plaintiffs' Partial Motion for Summary Judgment.  While trial will almost certainly be required in this action, in order to decide damages and *some* questions of liability, partial summary judgment is appropriate here for two reasons: (1) to resolve liability as to those claims where Defendants' liability is not subject to any real dispute, and (2) to establish certain facts under FRCP 56(g), in order to narrow the issues remaining for trial.

This is a case where the Defendants engaged in one bad act, after another, after another. The Plaintiffs commenced this action after the Defendants illegally seized Sergio Espinosa, Jr.'s ("Junior") Mini Cooper, in an attempt to collect a judgment debt solely owed by his father. The Second Amended Complaint alleges that the Defendants then held on to Junior's car for over two weeks, even after they were fully aware that they had the wrong car, all while trying to shake money out of Junior to cover his father's debt.  Then, after finally returning Junior's Mini Cooper, the Defendants immediately seized the Honda Accord leased by Sergio Espinosa, Sr. ("Senior"), even though that leased vehicle is not something that can be seized to satisfy a debt.   The Defendants then held onto that leased vehicle for **<u>seven months</u>** - because they wanted Senior to pay the thousands of dollars demanded by the tow company for the towing and storage fees associated with the illegal seizure of these two vehicles, rather than pay those costs themselves – only finally relenting and returning that vehicle two months after this lawsuit was filed.

Now that discovery in this case has been completed, it has become evident that several issues in this case are not subject to any legitimate factual dispute, and are therefore suitable for resolution at summary judgment.

1

*First,* Junior was the sole owner of the Mini Cooper at all relevant times, and his vehicle could therefore not be legally seized as part of efforts to collect a debt solely owed by his father.

*Second,* Senior's Honda Accord was solely owned by Honda Lease Trust, and not by Senior, who instead was merely leasing that vehicle from Honda. Therefore, the Honda could not legally be seized either.

As discussed below, by seizing these vehicles, and by refusing to return them promptly, the Defendants violated the plain language of various provisions of both the Fair Debt Collection Practices Act and several provisions of Massachusetts law.

## II.    FACTUAL BACKGROUND

On August 21, 2006, a default judgment was entered in the Lowell District Court in favor of CACV of Colorado, LLC against Senior, based on a credit card debt incurred on an Aspire credit card. *See,* Rule 56 Statement of Facts, ¶13. The Lowell District Court then issued an Execution, directing the constables to seize assets of Senior in order to satisfy the debt. *See id.,* ¶20. Defendant, Champion Funding, Inc. ("Champion") is a debt buyer who purchases old defaulted debts, who then purchased this judgment from an entity named Caddis Funding LLC. *See id.,* ¶9, 21.

Defendant Andrew Metcalf is a debt collector, who operates a collection agency under his d/b/a, Judgment Acquisitions Unlimited ("JAU"). *See id.,* ¶3. Mr. Metcalf also wholly owns Champion. *See id.,* ¶8. After purchasing the debt, Champion then assigned the debt to JAU for collection. *See id.,* ¶23.[1] The Metcalf Defendants then hired Constable Brian Abelli ("Abelli") and the Massachusetts Constable's Office (the "MCO") to execute on the Judgment. *See id.,* ¶24.

---

[1] Given that JAU is a dba of Mr. Metcalf and that Mr. Metcalf is also the sole owner of Champion, these three Defendants are collectively referred to as "the Metcalf Defendants".

Because Abelli and the MCO don't have their own tow trucks, they then hired Export Enterprises ("Export") for the actual vehicle seizures.  *See id.*, ¶20.

On September 22, 2020, an Export tow truck and a constable from the MCO appeared at the Plaintiffs' home to seize the Mini Cooper parked outside the home, in order to collect on Senior's debt.  *See id.*, ¶32-33, 35.  However, that Mini Cooper is not an asset owned by Senior. *See id.*, ¶37.  At that time, Junior showed the vehicle registration – reflecting Junior as the sole owner of the vehicle - to the MCO constable as well as to the Export tow truck driver.  *See id.*, ¶39-41.  The Defendants nonetheless insisted that they were taking the Mini Cooper and drove off with Junior's car.  *See id.*, ¶43.

The morning after the Mini Cooper was seized, Junior called the Metcalf Defendants and advised them that they had no right to take his car, since he had nothing to do with Senior's debt. *See id.*, ¶44.  The Metcalf Defendants advised Junior that they did not believe him.  *See id.*, ¶45. Instead, the Metcalf Defendants attempted to get Junior to settle his father's debt for $4,000, with $3,000 of that due within 24 hours.  *See id.*, ¶48.  The Metcalf Defendants then held Junior's Mini Cooper for 16 days, only deciding to return the vehicle on October 9, 2020 so that it could then immediately seize Senior's Honda Accord.  *See id.*, ¶52-55.  During all this time, the Mini Cooper's registration was in the glove compartment of the Mini Cooper.  *See id.*, ¶42, 47. However, none of the Defendants ever bothered to check that registration – despite Junior specifically emailing the attorney for the Metcalf Defendants and specifically advising them that they had his vehicle and that "this could also be verified on the registration located inside the glove department [sic] of my vehicle."  *See id.*, ¶47, 49, 50.

On October 9, 2020, Export brought back Junior's Mini Cooper and immediately seized Senior's Honda Accord.  *See id.*, ¶55.  However, Senior does not own that Accord, which is owned by Honda Lease Trust, and which he merely leases.  *See id.*, ¶56.  Honda's attorney contacted the Metcalf Defendants four days later, on October 13, 2020, and advised them that they could not seize this leased vehicle.  *See id.*, ¶59.  On October 21, 2020, the Metcalf Defendants decided to release the Honda Accord.  *See id.*, ¶60.  However, despite knowing that Export would want to be paid the towing and storage costs associated with the seizures of these two vehicles, the Metcalf Defendants refused to pay those costs.  *See id.*, ¶61, 63.  Instead, Constable Abelli wrote to Export and advised that Senior would be responsible for the towing and storage costs associated with the seizure of both vehicles.  *See id.*, ¶61-62, 64.

After being notified that the Honda had been released, Senior and Junior drove nearly forty minutes from Dracut to Medford in order to retrieve that vehicle.  *See id.*, ¶65.  However, they were then advised by Export that they would first have to pay the towing and storage fees owed before they could retrieve the vehicle.  *See id.*, ¶67.  They therefore did not retrieve the vehicle, since they could not afford those charges.  *See id.*, ¶68.  The Defendants then continued to hold the Honda Accord for seven months, until it was finally towed back to the Plaintiffs' home on May 1, 2021, two months after this lawsuit was filed.  *See id.*, ¶70.

## III.   STANDARD OF REVIEW TO BE APPLIED TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 305–06 (1st Cir. 1997), citing Fed. R. Civ. P. 56(e) advisory committee's note to 1963 Amendment.  Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Borges ex rel. S.M.B.W. v. Serrano-Isern,* 605 F.3d 1, 4 (1st Cir. 2010).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Once this showing has been made, the nonmoving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177 (1990). An issue is "genuine" if the evidence of record permits a rational factfinder to resolve it in favor of either party. *Borges,* 605 F.3d at 4. A fact is "material" if its existence or nonexistence has the potential to change the outcome of the suit. *See id.,* at 5.

## IV.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FDCPA CLAIMS AGAINST THE METCALF DEFENDANTS.

Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* A primary driving purpose behind the Act's enactment was to "eliminate the recurring problem of debt collectors dunning the wrong person." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988), quoting S.Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were

inadequate, *id.* § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

Because the FDCPA is a remedial statute with a strict liability framework, its language is construed broadly and liberally so as to effect its purpose.  *Lannan v. Levy & White,* 186 F. Supp. 3d 77, 91 (D. Mass. 2016); *Pettway v. Harmon Law Offices, P.C.,* 2005 WL 2365331, at *3 (D. Mass. Sept. 27, 2005); *Glowacki v. Law Offices of Howard Lee Schiff, P.C.,* 2014 WL 2547919, at *2 (D. Mass. June 5, 2014).

### A.  Plaintiffs Have Established Each Element Of Their FDCPA Claims.

To establish a claim under the FDCPA, a plaintiff must show "(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." *Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 424 F. Supp. 3d 163, 167 (D. Mass. 2019), citing *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014); *Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349, 356 (D. Mass. 2008).

There is no dispute regarding the first two of these elements.  As the facts of this case reflect, both Senior and Junior were plainly the object of collection activity by Champion, a debt buyer, and the debt collectors it hired, Metcalf and JAU.  The FDCPA defines "debt," to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 USC § 1692a(5).  In this action, the underlying debt at issue consists of charges made on an Aspire credit card - which Senior solely opened and used for personal and household purposes - such as to pay for gas and food. *See,* Rule

56 Statement, ¶14-16.  Clearly credit card debt incurred to pay for gas and food is the quintessential type of consumer debt encompassed by the statute.

Finally, a "debt collector" is defined as either "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6).  In their Answer to the Second Amended Complaint, Metcalf and JAU each admitted that they meet this definition because they use the mail, telephone, or facsimile in a business the principal purpose of which is the collection of judgments and debts owed to another. *See,* Rule 56.1 Statement, ¶4-6.  And Champion similarly admitted that it is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the purchase of defaulted judgments and debts to be collected.  *See, id.*, ¶9, 10.  Champion is therefore a debt collector under the first prong of § 1692a(6).  *See e.g., Reygadas v. DNF Assocs., LLC,* 982 F.3d 1119 (8th Cir. 2020) (debt buyer whose business involved the purchase of defaulted consumer debt from originating creditors and the retention of third parties to collect it was in the principal business of collecting debts, and qualified as a 'debt collector'); *Barbato v. Greystone All., LLC*, 916 F.3d 260, 261–62 (3d Cir. 2019).

### B.  Metcalf, Champion and JAU Violated The FDCPA By Seizing And Holding Junior's Mini Cooper.

Debt collectors violate the FDCPA when they take seize property they are not entitled to seize.  Specifically, Section 1692f broadly prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  The FDCPA then provides a non-exhaustive list of conduct that is encompassed within this broad prohibition, including "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement."

7

*See,* 15 U.S.C. § 1692f(6)(C).  In this case, there is no question that Junior's Mini Cooper was not something that the law allowed the Defendants to seize when collecting on Senior's debt.

The default judgment that the Defendants were trying to enforce was solely entered against Senior.  *See,* Exhibit G.  Indeed, it couldn't have been entered against Junior, because he was born in 1991 and was therefore only fifteen years old at the time that the judgment was entered in 2006. *See,* Rule 56 Statement, ¶18, 19.  The Execution issued by the Lowell District Court was not some sort of sweeping grant of permission to just start taking random people's assets to satisfy Senior's debt; instead, it specifically allowed only for seizure of the *judgment debtor's* assets – i.e., Senior's assets.  *See,* Exhibit G ("The judgment creditor(s) named above has recovered judgment against the judgment debtor named above in the amount shown below….We Command You, therefore, from out of the value of any real or personal property of *such judgment debtor*").

Junior is clearly not the judgment debtor, so his assets can't be seized, just like the assets of Senior's neighbors – or attorneys – can't be arbitrarily seized in connection with this debt.  So when Metcalf, JAU and Champion nonetheless took Junior's vehicle to satisfy Senior's debt, they plainly engaged in unfair and unconscionable collection practices in violation Section 1692f.  As one court noted, "it is difficult to conceive of a more unfair debt collection practice than dunning the wrong person."  *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 925 (E.D. Cal. 2014).

The Defendants have argued in this case that they ran an asset search report on Senior, and that the report reflected that the Mini Cooper was registered to both Senior and Junior.[2]  However, whether or not Metcalf, Champion and JAU *knew* that they were taking the wrong car is irrelevant, because the FDCPA is a strict liability statute.  *See e.g., Harrington v. CACV of Colorado, LLC*,

_____

[2] The Defendants also testified that the asset search reports they use are not always accurate, but they continue to use them in their debt collection practice anyway.  *See,* Rule 56.1 Statement, ¶28.

508 F. Supp. 2d 128, 132 (D. Mass. 2007)("The FDCPA imposes strict liability on debt collectors for their violations. A plaintiff need not show intentional conduct by the collector"); *Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331 *3 (D.Mass.2005).  But the facts of this case reflect that these Defendants <u>did</u> know, or should have known, that they were taking and then holding a vehicle owned by Junior.

For example, these Defendants pulled an asset search report in April of 2020 – five months before the September 22, 2020 seizure - that reflected Junior was an owner of this vehicle.  *See,* Rule 56.1 Statement, ¶46.  Junior testified that he went to the glove box of the vehicle and physically showed his registration to the constable hired by these Defendants at the time of the seizure, and all parties agree that the registration solely reflects Junior as the sole owner of the Mini Cooper.  *See id.*, ¶39-41.  Finally, Junior called the Metcalf Defendants several hours after the seizure and again notified them that they had the wrong car.  *See id.*, ¶44.  Mr. Metcalf testified that he didn't return Junior's vehicle at that time because he needed to 'check things out'.  *See,* Exhibit D, 50:20 – 51:2[3]  Of course, *all these Defendants had to do was look at the registration sitting in the glove box of the car they were holding this entire time.  See id.*, ¶42-47.  They never did that.  *See id.*, ¶47.  Instead, these Defendants continued to try to negotiate with Junior to get his father's debt paid.  *See id.*, ¶48.  And for sixteen days, Junior was out of a car for no reason except that these Defendants eventually decided to just swap out his Mini Cooper for his father's Honda Accord.  *See id.*, ¶52.

Taking the wrong person's vehicle, and then continuing to hold onto that wrongly seized vehicle, is plainly an unfair and unconscionable practice.  In *In re Petralia*, 559 B.R. 275 (Bankr.

---

[3] Junior recalls this conversation not quite going so professionally, testifying that these Defendants told him "you are lying" that "I deal with liars everyday" and that the car actually belonged to Senior.  *See,* Rule 56.1 Statement, ¶44.

D. Mass. 2016), the court noted that "The Court can easily recognize that a creditor with actual knowledge of facts demonstrating that there is no equity in a vehicle, but which nonetheless requests seizure or *fails to immediately cause the release of a vehicle that has been seized*, could be viewed to have engaged in a coercive act that is unfair or unconscionable in violation of § 1692f." *Id.,* at 288–89.  In this action, the Defendants didn't just seize a debtor's car which ultimately didn't have enough equity in it.  Instead, these Defendants *took the wrong person's car*, despite knowing that this person owned the car prior to seizing it.  And instead of taking immediate steps to promptly rectify their error, and immediately return the vehicle to its rightful owner, the Defendants held that vehicle and kept trying to use it to negotiate settlement of the debt.

If illegally seizing the wrong person's car – and then holding onto that person's means of transportation for weeks, while continuing to demand payment on a debt that isn't even owed by that person – isn't an "unfair and unconscionable" practice, then it is hard to fathom what sort of conduct could ever qualify as a violation of Section 1692f under that standard.  For these reasons, it is respectfully submitted that Junior is entitled to summary judgment on his claims that the Metcalf Defendants violated Section 1692f of the FDCPA.

### C. Defendants Violated The FDCPA By Seizing And Holding Senior's Honda Accord.

Summary judgment is warranted on Senior's claims arising from the seizure of his Honda Accord as well.  At this point in the case, it is undisputed fact that the Honda was registered solely in Honda's name, and that Senior merely leased this car.   And as this Court has already acknowledged, a leased vehicle is not an asset of a judgment debtor which can be seized on an execution. *See, Espinosa v. Metcalf*, No. 21-CV-10356-DJC, 2021 WL 5639809, at *5 (D. Mass. Dec. 1, 2021)(noting that "under Massachusetts law, 'all property which by common law is liable to be taken on execution, may be taken and sold thereon, except as otherwise expressly provided.'

Mass. Gen. L. c. 235, § 31." and that it is "the principle of the common law that no property but that in which the debtor has a legal title is liable to be taken by execution"), quoting Van Ness v. Hyatt, 38 U.S. 13 Pet. 294, 298, 301, 10 L.Ed. 168 (1839) (holding that judgment debtor who had leased property with conditional right to purchase had no interest liable to execution).

Again, it is irrelevant whether or not these Defendants knew that the Accord was a leased vehicle, because the FDCPA is a strict liability statute. However, the undisputed facts reflect that these Defendants did, in fact, know *before* they seized the vehicle that it was a leased vehicle. *See,* Rule 56.1 Statement, ¶58. Moreover, Honda's attorneys reached out to these Defendants on October 13, 2020 – four days after the seizure – to advise them that this was a leased vehicle which the Defendants could not take. *See id.,* ¶59. And again, instead of immediately taking steps to promptly reunite Senior with his vehicle, the Defendants continued to hold the vehicle for an additional seven months.[4] As with the seizure of Junior's Mini Cooper, the seizure and continued holding of the leased Honda Accord is plainly also an unfair and unconscionable collection practice.

## V.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR STATE LAW CLAIMS AGAINST CHAMPION, METCALF, JAU, ABELLI, THE MCO AND EXPORT.

While the Defendants violated the federal consumer protection statutes, they also plainly engaged in conduct that violates Massachusetts' corollary laws. Chapter 93A provides that "unfair

---

[4] The Defendants may claim that they 'released' the vehicle on October 21, 2020. But that doesn't tell the whole story. The Metcalf Defendants expressly knew that Export would still expect to have its towing and storage fees paid, but they weren't willing to pay it even though they had illegally seized a leased vehicle. *See,* Rule 56 Statement, ¶63. Nor was the Constable that these Defendants hired. *See id.,* ¶62. So instead, Export was instructed to charge all of those fees and costs, for **both** vehicles, *to Senior* – who couldn't afford to pay these charges. *See id.,* ¶61-64, 68. Instead, the Defendants only arranged the return of the vehicle - without the need to first pay these fees - on May 1, 2021, two months after this lawsuit was filed. *See id.,* ¶70. In other words – "here is your car back, once you can pay thousands of dollars in towing and storage charges!"

methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A. Massachusetts also has its own unfair debt collection statute, Mass. Gen. Laws ch. 93, § 49, which is entitled "Debt collection in an unfair, deceptive or unreasonable manner." The statute reads as follows:

> No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

Mass. Gen. Laws ch. 93, § 49.

Violations of Chapter 93 are a per se violation of Chapter 93A. *See,* Mass. Gen. Laws ch. 93, § 49, cl. 7. Moreover, as expressly contemplated by M.G.L. c. 93A, § 2(c), the Attorney General then promulgated rules regarding deceptive and unfair practices in debt collection, violations of which are also *per se* violations of Chapter 93A. *See,* 940 Mass. Reg. 3.16. As this Court noted just last year, the Attorney General can make rules and regulations interpreting the provisions of Chapter 93A which define and outlaw certain unfair or deceptive business practices, and when regulations define such acts or practices, evidence showing violations of the Attorney General's Regulations qualify as unfair or deceptive acts as a matter of law. *See, Hebert v. Vantage Travel Serv., Inc.*, No. 17-CV-10922-DJC, 2021 WL 2516076, at *3 (D. Mass. June 18, 2021). In other words, "when regulations establish per se unfair or deceptive acts or practices, plaintiffs need not make an additional showing of unfairness or deceptiveness aside from evidence of the violation itself." *Id.,* at *2.

Expanding on the FDCPA's protections, 940 Mass. Code Regs. 7.07 then provides that "It shall constitute an unfair or deceptive act or practice to engage in any of the following practices to collect or attempt to collect any debt:

- Section 7.07(18): Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if:

    (a) there is no present right to possession of the property claimed as collateral through a court order or an enforceable security interest;

    (d) the property is exempt by law from such dispossession or disablement;

- Section 7.07(19): Taking possession of or selling upon execution property that is exempt from seizure on execution.

As discussed above, Champion, JAU and Metcalf plainly did not have the right to seize Junior's Mini Cooper in trying to execute on the judgment debt owed by Senior. At this point in the litigation, there is no debate that the Mini Cooper was not owned by Senior and that it therefore wasn't an asset that could be seized. Nor did these Defendants have the right to seize Senior's leased vehicle either, as an interest in a lease is not something that could have been attached under common law. And these Defendants certainly did not have a right to continue (1) to hold Junior's Mini Cooper in an effort to use it as a bargaining tool, or (2) to force Senior to pay the towing and storage fees demanded by Export for illegally taking his son's Mini Cooper and then taking his leased Honda Accord. The fact that the Defendants did these things is a black-and-white violation of Chapter 93, Chapter 93A and 940 Mass. Code Regs. 7.07.

The only additional element that needs to be established here is that the Defendants committed these unfair acts "in the conduct of any trade or commerce", as that term is used in Chapter 93A. And that showing is self-evident here: the Metcalf Defendants' entire business is the collection of old debts, and all of the complained-of conduct here was part of Defendants' efforts to collect on Senior's debt. While the statute does not define the meaning of the term "trade or commerce", the First Circuit expressly noted that "a debt collector's business is, by definition, collecting debts. Although we need not decide the issue here, we would be hard-pressed to imagine why a debt collector who violates Chapter 93 would not be acting in trade or commerce with

13

respect to the particular debtor." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123 (1st Cir. 2014).  Similarly, Export was engaged in "trade or commerce" when it used its tow trucks to seize the Plaintiffs' vehicles and its storage lot to store the Plaintiffs' vehicles.  So was Abelli and the MCO, when they seized the wrong person's vehicle, then seized a leased vehicle, and then refused to pay the tow company they hired, instead instructing the tow company to charge those costs to Senior in exchange for returning his vehicle.  *See, Andrews v. S. Coast Legal Servs., Inc.*, 582 F. Supp. 2d 82, 90 (D. Mass. 2008)(finding that purported constable was subject to Chapter 93A where the defendants had engaged in conduct which went beyond mere seizure and violated the FDCPA).

Finally, the reach of the AG's regulations, Chapter 93 and Chapter 93A are not just limited to 'debt collectors', such as under the FDCPA.  For example, Chapter 93 governs the debt collection activity of "a creditor or an attorney for a creditor, or an assignee of a creditor".  Mass. Gen. Laws ch. 93, § 49.  And the term "creditor" is defined as "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor." 940 C.M.R. § 7.03.  As this Court has already recognized, this term "would encompass Export allegedly acting on behalf of Champion, Metcalf and JAU".  *Espinosa v. Metcalf*, 2021 WL 5639809, at *6; *see also, id.,* at *7 ("Export satisfies the regulatory definition of 'creditor,' which encompass 'agents' and 'servants' of creditors").  By the same token, this term also encompasses Abelli and the MCO, who were hired by Metcalf, Champion and JAU to collect this debt, and who in turn hired Export to carry out the actual tows.[5]

---

[5] Mr. Metcalf expressly testified that he is aware that the constables do not have their own tow trucks to seize the vehicles he requests, and that they will therefore hire a tow company to carry out the actual seizures.  *See,* Rule 56.1 Statement, ¶25.

Finally, Massachusetts law specifically contemplates that constables who seize the wrong person's property can be held liable for those actions.  For that very reason, Mass. Gen. Laws Ann. ch. 235 provides that "If there is reasonable doubt as to the ownership of personal property or as to its liability to be taken on execution, before or after the execution has been levied thereon, the officer may require sufficient security from the creditor to indemnify him for taking or continuing to hold the same. If sufficient security is not furnished within a reasonable time after the officer has made a written demand upon the creditor or his attorney, the officer may refuse to levy the execution or, if he has already levied it, may discharge his levy, without liability to the creditor therefor."  Mass. Gen. Laws ch. 235, § 35.  "The very existence of this statute demonstrates that officers may be held liable for taking the property of someone not named in the writ and provides officers with an opportunity to insulate themselves from that unpleasant prospect."  *Cady v. Marcella*, 49 Mass. App. Ct. 334, 340, 729 N.E.2d 1125, 1131 (2000).

In this case, the Defendants each took part in illegally seizing and holding Junior's Mini Cooper, despite each being told that they had the wrong car.  They then illegally seized Senior's leased vehicle, and held onto that vehicle for seven months, because they could not work out amongst themselves how to resolve Export's fees.  Export wasn't willing to forego the towing and storage costs it felt it had earned for illegally seizing these two vehicles.  Abelli and the MCO weren't willing to pay for it, despite having hired Export.  And the Metcalf Defendants refused to take responsibility either, despite being the cause for much of this fiasco.  While the Defendants can ultimately hash out amongst themselves who is at fault here, the fact remains that each of them engaged in unfair and unconscionable practices towards the Plaintiffs in violation of state law.

For these reasons, the Plaintiffs should be granted summary judgment on their claims that the Defendants violated Chapter 93A, Chapter 93 and 940 Mass. Code Regs. 7.07.

15

**VI.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CONVERSION CLAIMS AGAINST CHAMPION, METCALF, JAU, ABELLI, THE MCO AND EXPORT.**

The Plaintiffs' claims for Conversion are as straightforward as it gets: the Defendants took Junior's car, despite Junior being a complete innocent party who had no connection to the Defendants or to Senior's debt.  The Defendants then held onto that car for sixteen days, despite Junior's pleas for its return.  The Defendants then seized Senior's Honda even though that vehicle was not an asset that was subject to seizure – and even though Honda's attorney immediately let them know that they couldn't seize this leased vehicle.  The Defendants then held that vehicle for seven months, and Export is now even suing Senior for the thousands of dollars in storage costs that accrued during that time.  In fact, Export even threatened to sell Senior's vehicle as an 'Abandoned Vehicle' unless Senior ponied up the towing and storage costs it was charging.  *See, See,* Rule 56 Statement, ¶76; Exhibit T.

As this Court has already explained, "to establish a claim for conversion, a plaintiff must prove that the defendant 'exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment'." *Espinosa v. Metcalf*, 2021 WL 5639809, at *8, <u>citing</u> *In re Hilson*, 448 Mass. 603, 611, 863 N.E.2d 483 (2007).

The first element of this claim is easily met.  In this case, each of these Defendants intentionally and wrongfully took control of the Plaintiffs' vehicles – first by seizing and holding the Mini Cooper for 16 days, and then by seizing and holding the Honda Accord for 7 months.  Again, it does not matter if the Defendants thought that they were permitted to do so.  "It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods." *Kelley v. LaForce*, 288 F.3d 1, 12 (1st Cir. 2002), *Kelly v. Dubrow*, 2001 WL 287490, at *3 (Mass.App.Div. Mar.20, 2001)("it is no defense to an

action for conversion that a defendant who exercised dominion over the goods did so in good faith, reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods").

The second element is just as easily met.  As evinced by the Registration for the Mini Cooper, Junior plainly has an ownership and possessory interest in that vehicle, as the sole registered owner for that vehicle.  *See,* Exhibit H.  And as reflected in the Registration and Lease Agreement for the Honda Accord, Senior plainly has a possessory interest in the Honda as well. *See,* Exhibits J and K.

The third element is a no-brainer – each of the Plaintiffs lost the use of their vehicles for an extended period of time.  While Junior was still paying on his Note with Digital Federal Credit Union for the use of the Mini Cooper, he didn't have the Mini Cooper for 16 days because it was being held by the Defendants.  And while Senior was making his lease payments on the Honda, he had no way to use that vehicle for seven months while the Defendants were holding that as well. They clearly have been damaged by being deprived of the use of their respective vehicles.

Each of the elements for a claim of Conversion are thus plainly met here. Moreover, Junior demanded his Mini Cooper back the morning that the vehicle was repossessed.  And Senior called Honda, whose attorney called JAU on October 13, 2020, and demanded the return of the vehicle as well.  All of these demands were refused.  Instead, Junior's vehicle was held until the Defendants decided to swap it out for Senior's Honda Accord on October 9, 2020.  And the Defendants held onto Senior's Honda Accord for seven months, demanding that Senior pay the towing and storage fees incurred by **both** vehicles, until finally relenting on May 1, 2021.

It is therefore respectfully submitted that the Plaintiffs are entitled to a finding of summary judgment on their claims for Conversion.

## VII.    CONCLUSION

It is therefore respectfully submitted that the Plaintiffs' motion for summary judgment on their claims should be granted in its entirety.  While there are many factual he-said-she-said disputes over much of the claims in this case – relegating those issues to the province of the jury as the ultimate factfinder - the claims raised in this Motion are not subject to genuine dispute. Instead, it is clear that Junior's Mini Cooper should never have been seized by these Defendants. And once it was seized, it should have been returned immediately, rather than held as a bargaining chip in continued efforts to collect on Senior's debt.  Similarly, it is clear that Senior's leased vehicle should never have been seized.  And it should not have taken seven months for these Defendants to return that vehicle either.

It is therefore respectfully requested that the Plaintiffs' Motion for Summary Judgment on these specific issues be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: July 7, 2022

MARCUS & ZELMAN, LLC

By:   /s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:       (732) 695-3282
*Attorney for Plaintiffs Sergio Espinosa, Sr. and*
*Sergio Espinosa, Jr.*