**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SERGIO ESPINOSA SR. and SERGIO ESPINOSA JR,** | **Civil Case Number: 1:21-cv-10356-DJC** |
| **Plaintiffs,** | |
| | **ORAL ARGUMENT REQUESTED** |
| **-against-** | |
| **ANDREW C. METCALF d/b/a JUDGMENT ACQUISITIONS UNLIMITED, CHAMPION FUNDING, INC., EXPORT ENTERPRISES INC., MASSACHUSETTS CONSTABLE INC., d/b/a MASSACHUSETTS CONSTABLES OFFICE and BRIAN ABELLI,** | |
| **Defendants.** | |

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN RESPONSE TO THE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
FILED BY DEFENDANTS ANDREW C. METCALF d/b/a JUDGMENT
ACQUISITIONS UNLIMITED AND CHAMPION FUNDING, INC.**

---

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:      (732) 695-3282
Fax:          (732) 298-6256**
*Attorney for the Plaintiffs
Sergio Espinosa, Sr. and Sergio Espinosa, Jr.*

i

## <u>TABLE OF CONTENTS</u>

A.  Preliminary Statement……………………………………………………………1

B.  The Metcalf Defendants Have Not Established That They Are Entitled To The
Bona Fide Error Defense For Seizing Junior's Mini Cooper………………………………2

C.  Defendants Violated The FDCPA By Seizing Senior's Leased Vehicle………………..11

D.  The Metcalf Defendants Are Not Entitled To A Bona Fide Error Defense When
They Knowingly Seized A Leased Vehicle……………………………………………14

E.  Summary Judgment Is Appropriate On The Plaintiffs' 93A Claim……………………..16

F.  Defendants Present No Question Of Fact As To Plaintiffs' Conversion Claim…………17

G.  Conclusion……………………………………………………………………..17

## <u>TABLE OF AUTHORITIES</u>

*Aircraft Guar. Corp. v. Strato-Lift, Inc.,*

    991 F. Supp. 735 (E.D. Pa. 1998)……………………………………………………15

*Brown v. SWC Grp. LP,*

    2019 WL 2306115 (N.D. Ga. Feb. 12, 2019)…………………………………………...3, 5

*Brown v. SWC Grp. LP,*

    2019 WL 1147125 (N.D. Ga. Jan. 10, 2019)…………………….……………………….5

*Currier v. First Resol. Inv. Corp.,*

    762 F.3d 529, 537 (6th Cir. 2014)……………………………………………….....6

*Engelen v. Erin Cap. Mgmt., LLC,*

    544 F. App'x 707 (9th Cir. 2013)………………………….……...……....……3, 8

*Espinosa v. Metcalf,*

    575 F. Supp. 3d 250 (D. Mass. 2021)…………………………………………...11

*Fiske v. MeYou Health, Inc.,*

    No. CIV.A. 13-10478-DJC, 2014 WL 2818588 (D. Mass. June 20, 2014)……………...5

*Fitch v. Fed. Hous. Fin. Agency,*

    2022 WL 684083 (D.R.I. Mar. 8, 2022)………………………………………………13

*Gallegos v. LVNV Funding LLC,*

    169 F. Supp. 3d 1235 (D. Utah 2016)…………………………………………..9

*Gathuru v. Credit Control Servs., Inc.,*

    623 F. Supp. 2d 113 (D. Mass. 2009)…………………………………………4

*Johnson v. Riddle,*

    443 F.3d 723 (10th Cir.2006)………………………………………………...6

*Kelley v. LaForce,*

    288 F.3d 1 (1st Cir. 2002)……………………………………………...17

*Kelly v. Dubrow,*

    2001 WL 287490 (Mass.App.Div. Mar.20, 2001)………………………………….17

*Lannan v. Levy & White,*

    186 F. Supp. 3d 77 (D. Mass. 2016)……………………………………………..3

*LaRocque ex rel. Spang v. TRS Recovery Services, Inc.,*

    285 F.R.D. 139 (D.Me.2012)………………………………………………3

iii

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
   637 F.3d 939 (9th Cir. 2011)…………………………………………...…….....6, 11

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
   911 F. Supp. 2d 1 (D. Mass. 2012)…………………………………………………3

*Micks v. Gurstel Law Firm, P.C.,*
   365 F. Supp. 3d 961 (D. Minn. 2019)………………………………………………5

*Owen v. I.C. System, Inc.*,
   629 F.3d 1263 (11th Cir.2011)……………………………………………………3, 4

*Pettway v. Harmon Law Offices, P.C.*,
   No. 03–CV–10932–RGS, 2005 WL 2365331 (D.Mass. Sept. 27, 2005)…………………3

*Piatt v. Oliver,*
   19 F. Cas. 550 (C.C.D. Ohio 1840)………………………………………………13

*Reichert v. Nat'l Credit Sys., Inc.*,
   531 F.3d 1002 (9th Cir. 2008)……………………………………………………10

*Van Ness v. Hyatt*,
   38 U.S. 294, 10 L. Ed. 168 (1839)……………………………………………12, 13

*Vazquez v. Lopez–Rosario*,
   134 F.3d 28 (1st Cir.1998)…………………………………………………………16

*Villalba v. Houslanger & Assocs., PLLC,*
   2022 WL 900538 (E.D.N.Y. Mar. 28, 2022)…...…………………………………6

*Webster v. ACB Receivables Mgmt., Inc.*,
   15 F. Supp 3d 619 (D. Md. 2014)…………………………………………………8


Statutes and Other Sources

15 U.S.C. § 1692k(c)…………………………………………………………………3

59 C.J.S. Mortgages § 110 (Feb. 2022 update)…………………………………………13

Black's Law Dictionary (11th ed. 2019)………………………………………………13

Mass. Gen. L. c. 235, § 31……………………………………………………………...11

### A. Preliminary Statement

This Reply is submitted in response to the Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed by Defendants Metcalf d/b/a Judgment Acquisitions Unlimited and Champion Funding ("the Metcalf Defendants"). While this case is certainly headed to trial because of the many fact-intensive questions that are presented in this action, the Motion for Partial Summary Judgment was filed in order to simplify the issues remaining for trial. Several of the issues which can be resolved at this time are:

(a) whether the Metcalf Defendants violated the FDCPA by seizing a car solely owned by Junior – and then holding that car for several weeks - while trying to collect on Senior's debt;

(b) whether the Metcalf Defendants violated the FDCPA by illegally seizing Senior's leased car and refusing to return it for seven months; and

(c) whether all of the Defendants unlawfully violated Chapter 93A, and converted the Plaintiffs' property, when they engaged in these bad acts.

In their Opposition, the Metcalf Defendants raise several challenges to summary judgment, none of which are actually supported by the law or the undisputed admissible evidence in the record before this Court. For example, the Metcalf Defendants claim that they are entitled to a *bona fide* error defense for illegally taking Junior's car, despite the undisputed evidence that they held onto that car for 16 days after (1) Junior physically showed the Metcalf Defendants' agent his registration for his car at the time of the seizure, showing him as the only owner of the vehicle, and after (2) Junior immediately reached out to the Metcalf Defendants right after the seizure, advising them that they had his car, and that they could verify this by simply checking the registration in the glove compartment of the car they were holding.

Similarly, the Metcalf Defendants argue that they cannot be held responsible for seizing a vehicle they knew was a lease - and then holding that vehicle for seven months after immediately

being contacted by Honda's attorney - all because they did not want to cover the towing and storage fees they had incurred to the towing company by seizing these two vehicles. The Metcalf Defendants also seem to argue that they were somehow permitted to seize a leased vehicle, despite common sense dictating they could not possibly satisfy a judgment with that seizure, and that seizure being directly contrary to Massachusetts law and Supreme Court precedent.

Finally, the Defendants try to oppose the Plaintiffs' Chapter 93A and conversion claims, without demonstrating a single question of fact that would preclude the granting of judgment on those claims. Instead, for the reasons set forth below, it is respectfully submitted that summary judgment is properly awarded on the Plaintiffs' partial Motion for Summary Judgment.

**B. The Metcalf Defendants Have Not Established That They Are Entitled To The Bona Fide Error Defense For Seizing Junior's Mini Cooper.**

In their first argument, the Metcalf Defendants try to mount a *bona fide* error defense by relying on a series of abjectly false statements. For example, the Metcalf Defendants argue that "other than calling JAU and claiming to be the owner of the Mini Cooper, Junior did not take any further action to disprove what both JAU and MCO's skip trace research showed [that Senior, along with Junior was a registered owner of the Mini Cooper]". *See,* Docket 72, at 4. This disregards the undisputed record evidence demonstrating the fact that, at the time of the seizure, Junior showed his physical registration to the agent[1] for the Metcalf Defendants. *See*, Plaintiff's Exhibit B, 19:17-21; 22:9-17; 23:11-17; 95:22-96:15; 126:17-127:6; 21:21-24; 85:17-20. This also disregards the undisputed fact that on September 24, 2020 – one day after the seizure - Junior emailed his Digital Federal Credit Union car loan documents to the Metcalf Defendants, showing him as the only borrower on the vehicle, and advising the Defendants that they could verify this

---

[1]Mr. Abelli and the MCO have expressly admitted that they were agents of the Metcalf Defendants. *See,* Docket 68, at 1, ¶1. The Metcalf Defendants have not attempted to challenge that assertion.

2

information by checking his registration in his glove compartment.  *See*, Plaintiff's Exhibit B, 127:22 – 128:8.  *See also*, September 24, 2020 email, at Plaintiff's Exhibit I.

These facts demonstrate that the Metcalf Defendants cannot possibly have met their burden of showing that they are entitled to the bona fide error defense.  This defense provides a narrow carveout to the otherwise strict liability framework of the FDCPA.  *See e.g., Lannan v. Levy & White*, 186 F. Supp. 3d 77, 91 (D. Mass. 2016)(noting that "the FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose"); *Pettway v. Harmon Law Offices, P.C.*, No. 03–CV–10932–RGS, 2005 WL 2365331, at *3 (D.Mass. Sept. 27, 2005)(same). A debt collector may avoid liability if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  Accordingly, the defense is a three-pronged defense, which requires that: "(1) The alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 60 (D. Mass. 2012); *LaRocque ex rel. Spang v. TRS Recovery Services, Inc.*, 285 F.R.D. 139, 157 (D.Me.2012).  This defense "is a 'narrow carve out' to the FDCPA's general rule of strict liability." *Brown v. SWC Grp. LP*, 2019 WL 2306115, at *4 (N.D. Ga. Feb. 12, 2019), quoting *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1271 (11th Cir.2011).

Since the *bona fide* error defense is an affirmative defense, the Defendants bear the burden of proof and are required to affirmatively establish each element of the defense.  *See, Engelen v. Erin Cap. Mgmt., LLC*, 544 F. App'x 707, 709 (9th Cir. 2013)("The bona fide error defense is a 'narrow exception to strict liability under the FDCPA,' so defendants bear the burden of proof at summary judgment"); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d at

60, citing *Owen v. I.C. System, Inc.,* 629 F.3d at 1271 ("§ 1692k(c) is an affirmative defense under which debt collector bears burden"); *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113, 122–23 (D. Mass. 2009)(granting plaintiff's motion for summary judgment on his FDCPA claims because "defendant has not submitted sufficient evidence to demonstrate that it is entitled to assert the affirmative defense of bona fide error"). The Defendants did not meet their burden of demonstrating that they are entitled to this defense here, for a number of reasons.

The Defendants' *bona fide* error defense falls flat for the most basic reason of all: because the <u>only</u> admissible evidence in this case demonstrates that the Defendants took Junior's vehicle to satisfy Senior's debt, despite having actual knowledge that the seized vehicle did not belong to Senior. This is undisputed, again based on the <u>only</u> admissible evidence in the record before this Court. Specifically, Senior testified that – at the time that the Mini Cooper was being seized - he saw Junior come out of the house, remove the registration from the glove box of the Mini Cooper, and show that registration to the constable. *See*, Plaintiff's Exhibit A, 29:1-4; 33:9-14; 55:20-24; 28:13-17. Junior testified to the same thing: that he told the constable "that's my car" and that he showed the registration for the Mini Cooper to the constable to prove that he was the sole registered owner of the vehicle. *See*, Plaintiff's Exhibit B, 19:17-21; 22:9-17; 23:11-17; 95:22-96:15; 126:17-127:6; 21:21-24; 85:17-20.

**<u>There is zero admissible evidence in this case to contradict this sworn testimony that the constable was shown the Mini Cooper's registration at the time of the seizure, but that he seized it anyway</u>**. As explained at length in opposition to the Motion for Summary Judgment filed by Mr. Abelli and the MCO (*see,* Docket 79, at 9-10), the **<u>only</u>** evidence to the contrary is rank hearsay, relayed by a witness who had had no actual knowledge of what occurred at the time of the seizure. *See,* Plaintiff's Exhibit F, 150:21-25; 18:5 – 19:1; 71:21 – 72:1; 74:6 – 75:1. As

this Court has previously held, such inadmissible evidence cannot be considered at summary judgment just like it cannot be considered at trial. *Fiske v. MeYou Health, Inc.*, No. CIV.A. 13-10478-DJC, 2014 WL 2818588, at *3 (D. Mass. June 20, 2014).

In light of this undisputed record evidence, the Metcalf Defendants cannot claim entitlement to the *bona fide* error defense based on their stubborn reliance on asset search reports they knew to be unreliable. The Metcalf Defendants expressly testified that the asset reports they use are not always accurate, yet they continue to use these reports anyway. *See,* Plaintiff's Exhibit C, 52:8-21. And Constable Abelli is similarly aware that the asset search reports he uses are sometimes outdated or incorrect, and particularly are not helpful in 'Junior/Senior' situations. *See,* Plaintiff's Exhibit D, 146:14 – 147:8. But even if blind reliance on knowingly unreliable asset search reports was a 'policy and procedure' strong enough to support a *bona fide* error defense, that defense flies out the window in the face of undisputed evidence demonstrating that the Metcalf Defendants were physically shown the actual registration for the Mini Cooper listing Junior as the sole owner. *Brown v. SWC Grp. LP*, 2019 WL 1147125, at *13 (N.D. Ga. Jan. 10, 2019), report and recommendation adopted, 2019 WL 2306115 (N.D. Ga. Feb. 12, 2019)(noting that the defense would be unavailable after the debt collector was advised that the account was not the plaintiff's, because "Defendant has not shown that it reasonably relied on information from Verizon in ignoring Plaintiff's assertions that the account was fraudulent"); *Micks v. Gurstel Law Firm, P.C.,* 365 F. Supp. 3d 961, 977 (D. Minn. 2019) (objectively unreasonable for debt collector to not conduct any factual investigation despite receiving two calls from debtor's employer indicating he had paperwork relating to debtor's bankruptcy discharge and court release, and court paperwork indicating debtor's wages should not have been garnished).

In this case, it is undisputed – based on the only admissible evidence in the record – that the constable was shown the registration for the Mini Cooper at the time that he seized that vehicle. *See,* Response to Metcalf's Statement of Facts ("RSOF"), ¶3.  It is also undisputed that this registration solely reflects Junior as the only registered owner of that Mini Cooper.  *See id.*, ¶9. Accordingly, the Defendants cannot fall back on procedures they claim to *normally* use in regular seizures to ascertain they are taking the correct vehicle; not when they were presented with actual proof, in *this* case, that they were taking the wrong vehicle.  *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014)("Although First Resolution alleges that the invalid lien *began* as an unintentional bona fide error, it admits that it learned of Currier's motion to vacate the judgment on the same day it filed the judgment lien and nonetheless failed to release the lien for a month").

Nor have the Defendants demonstrated that the procedures they use are reasonable to prevent the specific error at issue in this case – the seizure of the wrong person's assets.  The courts have been very clear on this point: "the mere existence of generic procedures is not enough; instead, the debt collector must show that it took precautions meant to eliminate *the specific error complained of by the plaintiff*." *Villalba v. Houslanger & Assocs., PLLC*, 2022 WL 900538, at *8 (E.D.N.Y. Mar. 28, 2022).  *See also, McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 948 (9th Cir. 2011)("the procedures that support a valid bona fide error defense must be 'reasonably adapted' to avoid the specific error at issue"); *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir.2006) (noting that the court must determine "whether the procedures were 'reasonably adapted' to avoid the specific error at issue").

The specific error at issue in this case is the seizure of the wrong person's vehicles, caused by reliance on unreliable asset search reports.  The Metcalf Defendants claims that they provided an asset search report when he sent over the Judgment to the constables to be executed on.  And

the constables claim they ran their own asset search through a program called LP Police.[2]  But Mr. Metcalf expressly testified that the asset reports he uses are not always accurate, yet he continues to use these reports anyway. *See,* Plaintiff's Exhibit C, 52:8-21.  And Constable Abelli is similarly aware that the asset search reports he uses are sometimes outdated or incorrect. *See,* Plaintiff's Exhibit D, 146:14 – 147:8.  That is why Constable Abelli testified that when a paper registration for a vehicle reflects only one owner of the vehicle, but the asset search reports reflect that the vehicle has two potential owners, then the asset search report is likely outdated and it would be wrong to take the car in reliance on that report. *See,* Plaintiff's Exhibit D, 148:22 – 150:2.

Moreover, Mr. Abelli further specifically testified that these asset search reports are particularly unreliable to prevent the issues that arose in this <u>specific</u> case, **because these reports "will not always put Junior or Senior on an ownership. So it makes it really difficult to find out if it was a Junior or Senior**." *See,* Plaintiff's Exhibit D, 97:1-5.  Because of that persistent issue, Mr. Abelli admitted at his deposition that this is not the first time he has improperly seized a vehicle owed by a debtor's son while trying to execute on a judgment owed by the debtor. *See,* Exhibit D, 95:20 – 96:23.  Here, Constable Abelli **knew** that he was dealing with a 'Junior/Senior' situation before he seized the Mini Cooper, because the asset lead report provided by JAU reflected two potential registered owners: Sergio Espinosa, with a date of birth in 1962, and Sergio Espinosa, Jr., with a date of birth in 1991. *See,* Plaintiff's Exhibit D, 46:15:22; 47:17 – 49:18.  Clearly, then, it would be objectively unreasonable to solely rely on these concededly unreliable reports (which Abelli admits don't do a good job in distinguishing between a Junior and Senior), particularly when confronted by Junior physically providing the actual registration for the vehicle at the time

---

[2] Mr. Abelli testified that he has no actual knowledge of what the LP Police search showed *prior* to the seizure of the Mini Cooper, instead only producing a partial printout from that website which was only pulled five months *after* that seizure. *See,* Plaintiff's Exhibit F, 116:12 – 117:7.

of the seizure, showing that Sergio Espinosa, Jr. was the only registered owner. *See,* Plainitff's Exhibit G.

Courts have generally required some sort of redundancy or safeguards in order for the debt collector to be entitled to this limited exception to the FDCPA. In *Engelen v. Erin Cap. Mgmt., LLC*, 544 F. App'x 707 (9th Cir. 2013), the Ninth Circuit found that the *bona fide* error defense was not established under such circumstances. In that action, the debt collector garnished the wrong person's wages, despite claiming to have procedures in place to prevent something like that from happening. The Ninth Circuit found that "Rosen & Loeb presented no evidence of any regular redundancies designed to catch human recording errors. Nor did Rosen & Loeb contact the debtor, Erin Capital, or the court before taking the serious steps of filing a Writ of Execution and garnishing Engelen's wages.**" *Engelen*, 544 F. App'x at 709. Similarly, in *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619 (D. Md. 2014), the court rejected the BFE defense because the debt collector "failed to present any evidence of redundancy or safeguards in its procedures to prevent the mistaken violation of the FDCPA by its employees." *Id.,* at 629.

As in *Engelen,* here we are dealing with a problem that the Defendants were aware of from their past seizures – wrongful seizures, resulting from the use of unreliable and outdated asset search reports, particularly when dealing with a situation involving a 'Junior/Senior' father and son who share the same name. The Defendants have seized the wrong person's car in the past because of this. And yet, the Defendants took no additional steps to ensure that they were taking the right person's car in this case, especially when Junior personally showed them the Mini Cooper's registration with the name "Sergio Espinosa, Jr." on it. **This is particularly egregious when considering that both sides agree that Junior called the Metcalf Defendants the day**

**after the seizure and told them they had his car**.  *See,* Plaintiff's Exhibit B, 29:18 – 30:11, 45:14-24; Plaintiff's Exhibit D, 50:15 – 51:2.

In *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235 (D. Utah 2016), the district court found that the defense was unavailable as a matter of law, considering this lack of adequate procedures.  In that action, "the violation of the FDCPA at issue is continuing to target debt collection activities at Plaintiff's address after receiving multiple, clear notices that the Plaintiff's address may be different than the debtor's and without performing any research to determine whether the information was accurate."  *Id.,* at 1243.  The *Gallegos* debt collector argued that their practice was to mail an initial collection letter to the address on file, prior to filing a debt collection lawsuit.  *See id.*  The *Gallegos* court found that this was insufficient to demonstrate that these "procedures were reasonably adapted to avoid continuing to target debt collection activities at an erroneous address", because "sending debt collection letters to an erroneous address, in addition to itself potentially violating the FDCPA, does not help avoid targeting additional debt collection activities at the same address *without a companion procedure requiring additional research or a stoppage of activity if notice of a potential error is given*."  *Id.,* at 1244.

Here, the Defendants were aware that they were relying on reports that both Mr. Abelli and Mr. Metcalf agreed have not always been the most reliable.  These Defendants were aware that these reports often do not properly distinguish between a Senior and a Junior when returning hits on potential vehicle ownership.  And yet, these Defendants have offered zero evidence of the procedures they have in place to stop the seizure where – as here – they are physically presented with evidence that they are taking the wrong person's car.  True, Mr. Abelli testified that it would be wrong to rely on the asset search report and take a car when the information on the vehicle's

paper registration contradicts the information from these unreliable reports[3] – however, for some

reason, the Defendants here went ahead with the seizure anyway.  And then when Junior called

them the next morning to straighten out the situation, they called him a "you are lying" and that "I

deal with liars everyday."  *See,* Plaintiff's Exhibit B, 45:14-24.

      The use of unreliable asset search reports cannot possibly be an adequate 'policy and

procedure' that can support a bona fide error defense.  As discussed above, both Mr. Metcalf and

Mr. Abelli  were aware that these asset search reports are not always reliable, and have seized the

wrong person's vehicle in the past as a result.  The Ninth Circuit has held that the *bona fide* error

defense "does not protect a debt collector whose reliance on a creditor's representation is

unreasonable" and that "the fact that the creditor provided accurate information in the past cannot,

in and of itself, establish that reliance in the present case was reasonable and act as a substitute for

the maintenance of adequate procedures to avoid future mistakes."  *Reichert v. Nat'l Credit Sys.,*

*Inc.*, 531 F.3d 1002, 1006-1007 (9th Cir. 2008).  In fact, the LP Police website specifically

---

[3] *See,* Plaintiff's Exhibit D, 148:22 – 150:1:

    Q.      To make sure we are answering the same question.  Say you show up to my house to seize a vehicle.  I take out the registration from my glove compartment showing you that the only person that the vehicle is registered to is my name on that registration.  If the JAU asset search or the LP Police report showed a different owner of the vehicle, would you agree that in such a situation, you would go with the certificate of registration and not with the LP Police report or the JAU asset search?

    A.      If it was shown to me?

    Q.      Yes.

    A.      Had that one person as the owner?

    Q.      Yes.

    A.      I probably would.

    Q.      Okay.  And in such a situation where they are showing you the physical registration showing they are the sole owner of the vehicle, do you still think in that situation it would still be okay to take the vehicle based on the LP Police report or the JAU asset search?

    A.      **So if they actually showed the registration and that's -- they are the owner, then, <u>no</u>**.

disclaims the accuracy of the information provided in these reports.  *See,* Plaintiff's Exhibit D, 37:4-10[4].  The courts have found that a debt collector cannot reasonably rely on such information, in order to support a *bona fide* error defense, when the information relied on comes with such a disclaimer.  *See e.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 949 (9th Cir. 2011)(finding that "the undisputed evidence established that JRL's reliance on CACV's email was unreasonable as a matter of law" where "Collect America's contract with JRL expressly disclaimed 'the accuracy or validity of data provided' ").

For the reasons set forth above, it is respectfully submitted that the Defendants failed to establish a material question of fact as to whether they are entitled to a *bona fide* error defense, as they failed to establish each element of that defense.

### C.  Defendants Violated The FDCPA By Seizing Senior's Leased Vehicle.

The Metcalf Defendants next try to argue that they were permitted to seize Senior's leased Honda, but do not actually discuss the Massachusetts law on this issue.  However, the law is clear that such a vehicle cannot be seized.  This inquiry starts with the Execution issued by the Lowell District Court.  *See,* Plaintiff's Exhibit G.  That Execution plainly instructs the constables to satisfy the judgment "out of the value of any real or personal property of such judgment debtor."  *See id.* The term 'property' in this context means something; as this Court has already recognized, Massachusetts law specifically provides that, "[a]ll property which by common law is liable to be taken on execution, may be taken and sold thereon, except as otherwise expressly provided." *Espinosa v. Metcalf*, 575 F. Supp. 3d 250, 258 (D. Mass. 2021), <u>citing</u> Mass. Gen. L. c. 235, § 31.

---

[4] *See also,* Plaintiff's Exhibit M, page 2, paragraph 10 ("LPPOLICE does not guarantee or warrant the correctness, completeness, merchantability, or fitness for a particular purpose of the Services or information provided therein").

In this case, the Honda Accord is not the 'property' of Senior; as the Accord's registration makes clear, the registered owner of that vehicle is Honda, not Senior.  *See,* Plaintiff's Exhibit K. The only interest that Senior has in the Honda is that of a lease – essentially a long-term rental of the vehicle, in exchange for monthly payments.  The only other interest that Senior has in this vehicle is the option to purchase the vehicle at the end of the lease term, in exchange for a hefty payment (nearly $15,000, after making payments of $16,564.32 on a vehicle only originally valued at $23,320.09).  *See,* Plaintiff's Exhibit J.

The operative question then is whether this lease interest is something that was traditionally subject to seizure at common law.  Looking to see what common law historically allowed inevitably requires us to look to ancient decisions, such as the Supreme Court's holding in 1839 where it very plainly found that "**the principle of the common law undoubtedly is, that no property but that in which the debtor has a legal title is liable to be taken by this execution**".  *Van Ness v. Hyatt*, 38 U.S. 294, 298, 10 L. Ed. 168 (1839), <u>citing</u> 1 Vesey, Jr. 431. 8 East, 467. 5 Bos. and Pull. 461.  In *Van Ness,* a gentleman named James Shields leased a property for 10 years, with an option to buy the property at the end of the 10-year period.  A judgment creditor tried to enforce a judgment he had obtained against Mr. Shields by executing against Mr. Shields' interest in the leased property.  The Supreme Court rejected that remedy as unavailable under the common law, finding that "**<u>Shields' interest in the lot in question would not have been liable to execution, even if it had not been encumbered by a previous mortgage. And it is this: beyond the mere lease for years, Shields had no interest whatsoever in the lot, but the right to purchase, in case he, by a given time, complied with the particular conditions</u>**".  *Van Ness,* 38 U.S. at 300.  Thus, neither the "mere lease for years" nor the lessee's right to potentially buy out the lease at the end of its terms was something that could be attached at common law.

12

In *Van Ness,* the Supreme Court squarely answered the question of whether a lease interest was subject to seizure under the common law.  The Metcalf Defendants try to confuse this precedent by claiming that the Supreme Court was only applying Maryland law at the time, and that the result would have come out differently if a different State's law had been applied.  But this argument misses the point.  In *Van Ness,* the Supreme Court applied *common law,* because that was the relevant law at the time in question.  *Van Ness*, 38 U.S. at 294 (noting that, at the relevant time period, "the rule of the common law was the law of Maryland").  It then went on to state that common law would therefore govern, unless there was a contrary State law on the books dictating otherwise: "Now we have already seen, that by the common law, an equitable interest, such as an equity of redemption, is not liable to execution. This would be decisive of the case, unless there should be found to be some legislation, or some course of authoritative judicial decision, which had so far modified the common law, by engrafting upon it the principles of the Court of equity, in relation to mortgages, as to change the rule in this respect." *Id.*, at 298.  *See also, Piatt v. Oliver,* 19 F. Cas. 550, 560 (C.C.D. Ohio 1840), aff'd, 44 U.S. 333, 11 L. Ed. 622 (1845)(citing *Van Ness* and noting that "At common law it is a well settled principle, that an equity is not liable to an execution. In some of the states it has been held that an equity of redemption may be so sold, and, in others, such an equity is made subject to execution by statute. But wherever the common law rule prevails, an equitable interest can not be sold on execution").

Moreover, the Defendants' undeveloped argument analogizing mortgagors to lessees make no sense.  First, it is irrelevant – it does not change the notion that an equitable interest in a lease was not subject to seizure at common law.  Second, it makes no sense from a practical perspective.  In a mortgage setting, the owner of the property gives a security interest in the property to a mortgagee, in exchange for a loan.  *See, Fitch v. Fed. Hous. Fin. Agency*, 2022 WL 684083, at *10

(D.R.I. Mar. 8, 2022), quoting Black's Law Dictionary (11th ed. 2019) ("mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt"). Thus, before being able to convey the title to the property, the mortgagor must have legal title to the property. See id., quoting 59 C.J.S. Mortgages § 110 (Feb. 2022 update) ("mortgagor must, in general, have a present valid title to the estate to be encumbered or to that interest or share therein that the mortgage purports to convey, and one who has no ownership interest in property has no right to mortgage it without the owner's consent").

By contrast, a lessee (in this case Senior) does not have legal title to the leased property. Instead, all the lessee has is a right to use the property, in exchange for monthly payments. The legal title stays with the lessor, as it did in this case with the registered owner of the vehicle being listed as Honda Lease Trust. See, Plaintiff's Exhibit K. Senior had no more ownership interest in this leased vehicle than he would have in a car that he rented at the airport for a weekend. So it makes little sense to analogize the ownership rights of mortgagors to those of lessees. Instead, this is one of those cases where common law and common sense both lead to the same conclusion – that a lease interest is not something that can be seized in order to satisfy a judgment.

### D. The Metcalf Defendants Are Not Entitled To A Bona Fide Error Defense When They Knowingly Seized A Leased Vehicle.

The Metcalf Defendants next revert back to the *bona fide* error defense, and claim that they believed that Senior owned this leased vehicle, all because an asset search report had listed Senior as the owner. But Constable Abelli – the admitted agent of the Metcalf Defendants[5] - expressly testified that he knew, prior to seizing the Honda Accord, that this vehicle was leased from Honda Lease Trust. See, Plaintiff's Exhibit F, 55:5 – 58:7. And Mr. Metcalf similarly knew this Honda was a lease before it was seized. See, Plaintiff's Exhibit D, 60:9 – 61:25.

---

[5] *See,* footnote 1, above.

Moreover, it is undisputed that the Metcalf Defendants then continued to hold the leased Accord for months after they knew that vehicle had to be returned.  It is undisputed that, on October 13, 2020 (four days after the Accord was seized on October 9, 2020), Honda's attorney reached out to the Metcalf Defendants and advised them that they could not seize this leased vehicle which was owned by Honda.  *See,* Plaintiff's Exhibit D, 68:22 – 69:23.  On October 21, 2020, the Metcalf Defendants decided to release the vehicle.  *See id.*, 70:25 – 71:16.  However, they knew that Export would want to be paid for towing and storing both Junior's Mini Cooper and Senior's Honda Accord.  *See id.*, 89:6-23; 92:15-21.  They therefore instructed Constable Abelli to have Export charge those thousands of dollars in fees to Senior – which Abelli then did.  *See,* Plaintiff's Exhibit F, 66:9-17; 132:1-11.

The Metcalf Defendants claim that there is nonetheless an issue of fact as to "Senior's efforts to mitigate his damages and whether he could simply have paid the fees and gotten his car back rather than let seven months go by and then sue the Defendants for loss of his car for that lengthy period of time."  *See,* Docket 72, at 6-7.  But mitigation is not a defense to *liability*, it is a defense to *damages*.  *See e.g., Aircraft Guar. Corp. v. Strato-Lift, Inc.,* 991 F. Supp. 735, 739 (E.D. Pa. 1998)("the duty to mitigate is not necessarily an absolute defense, but rather concerns the amount of damages a plaintiff can recover").

In any event, Defendants' argument once again misstates the record evidence in this action. Instead, the only admissible evidence in the record in this action was that Senior did not pay the thousands of dollars associated with the illegal seizure and storage of these two vehicles *because he simply couldn't afford to.  See,* Exhibit B, 49:15-20; Exhibit A, 39:9-17.  There is nothing in the record contradicting this testimony that Senior was unable to pay these fees (which he should not have had to pay anyway).

**E.  Summary Judgment Is Appropriate On The Plaintiffs' 93A Claim.**

The Metcalf Defendants next challenge Plaintiffs' Motion for Summary Judgment as to their 93A claim, claiming that their conduct was not unfair or deceptive because they had relied on (known-to-be-unreliable) asset search reports.   The Defendants anticipate the Plaintiffs' argument that they held onto these vehicles long after they knew they could no longer do so, but claim a question of fact still exists because "Brian Abelli testified that no one at MCO ever spoke with Junior or Senior at the time of seizure. Therefore, a clear question of fact has arisen regarding this issue that would preclude summary judgment."  *See,* Docket 72, at 7.  Thus, the only 'factual question' raised by the Defendant is plainly based on rank hearsay, which is legally insufficient to preclude summary judgment, under First Circuit precedent.  *See e.g., Vazquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir.1998) ("Evidence that would be inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment").

Defendants also claims that a question of fact exists "regarding why the Mini Cooper and the Honda Accord were retained following the seizure." *See,* Docket 72, at 7.  To support this question of fact, the Defendants claim that "While Junior claims to have had the registration in the glove box, it is undisputed that he never showed it, or any other documentation, to anyone at JAU." *See id.*  Again, the *only* admissible evidence in this action is Junior's and Senior's sworn testimony, both of whom testified that Junior showed the registration to Constable Abelli, who has admitted that he is an agent of JAU.  And although Junior could not thereafter show the registration to the Defendants (since it was in the glove box of the car that they seized) he expressly told the Metcalf Defendants on the day after the seizure to verify his story by checking his registration in the glove box.  *See,* Plaintiff's Exhibit B, 127:22 – 128:8.  *See also*, September 24, 2020 email, at Plaintiff's Exhibit I.

16

Finally, Defendant claims that "there is a question of fact surrounding why Senior was without the Honda Accord and wrongfully for what period of time". *See,* Docket 72, at 8. Again, there is no question of fact on this issue. All parties are in agreement that Senior did not pick up his vehicle because he was told he would have to pay towing and storage fees incurred by the seizure of both vehicles, if he wanted to redeem his illegally seized leased vehicle. See, Junior's testimony at Plaintiff's Exhibit B, 49:15-20; Senior's testimony at Plaintiff's Exhibit A, 39:9-17; Abelli's testimony at Plaintiff's Exhibit F, 91:12-18. And again, this would be a mitigation issue that would go to damages, which is not at issue on this partial Motion for Summary Judgment.

### F.  Defendants Present No Question Of Fact As To Plaintiffs' Conversion Claim.

The Defendants solely oppose the Plaintiffs' conversion claim on the basis that they did not know that the Mini Cooper was Junior's car or that the Honda Accord was only a leased vehicle. But that is no defense, as explained in Plaintiffs' opening brief: "It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods." *Kelley v. LaForce*, 288 F.3d 1, 12 (1st Cir. 2002), *Kelly v. Dubrow*, 2001 WL 287490, at *3 (Mass.App.Div. Mar.20, 2001)("it is no defense to an action for conversion that a defendant who exercised dominion over the goods did so in good faith, reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods").

### G.  Conclusion

For these reasons, it is respectfully submitted that the Metcalf Defendants have not established that any material questions of fact exist as to the basis of Plaintiffs' Motion for Partial Summary Judgment, and that the Motion should therefore be granted in its entirety.

Dated: August 8, 2022

Respectfully submitted,

By:__/s/ Yitzchak Zelman_____
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.
*Attorney for the Plaintiffs*