UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| SERGIO ESPINOSA SR. and SERGIO ESPINOSA JR.,<br><br>Plaintiffs<br><br>v.<br><br>ANDREW C. METCALF d/b/a JUDGMENT ACQUISITIONS UNLIMITED, et al.,<br><br>Defendants. | Case No. 21-cv-10356-DJC |

<u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                                             **October 31, 2022**

**I.    Introduction**

Plaintiffs Sergio Espinosa Sr. and Sergio Espinosa Jr. (collectively, "Espinosas") have filed this lawsuit against Andrew C. Metcalf ("Metcalf") d/b/a Judgment Acquisitions Unlimited ("JAU"), Champion Funding, Inc. ("Champion"), Export Enterprises Inc. ("Export"), Massachusetts Constable Inc. d/b/a Massachusetts Constables Office ("MCO") and Brian Abelli ("Abelli") (collectively, "Defendants") alleging violations of the Fair Debt Collection Practices Act ("FDCPA") codified at 15 U.S.C. § 1692 (Counts I, II, III, IV, VI, VII and VIII), violations of Mass. Gen. L. c. 93 and 93A (Counts V and IX), conversion (Count X) and violation of 42 U.S.C. § 1983 (Count XI) arising from an attempted debt collection. D. 41. The Espinosas and Export have settled their claims. D. 89. Although Abelli and MCO moved for partial summary judgment on Counts I, II, III, IV, VI, VII and VIII, these Defendants have also settled with the Espinosas,

1

D. 90, and the Court accordingly denies their motion, D. 67, as moot and denies the Espinosas' motion for partial summary judgment, D. 63, to the extent that it concerned claims against Abelli and MCO. Accordingly, the only part of the motions for summary judgment that remains for the Court's consideration is the Espinosas' motion as to Counts I, IV, V, VI, IX, and X against Champion, Metcalf and JAU.[1] For the reasons stated below, the Court ALLOWS the Espinosas' motion for summary judgment as to these claims against Champion, Metcalf and JAU.

## II.     Standard of Review

A court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.' " Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citation omitted). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). If the movant meets its burden, the nonmovant "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.' " Id. (alteration in original) (quoting

---

[1] The Espinosas' motion is not phrased as a partial motion for summary judgment, D. 63 at 1, but their memorandum inconsistently uses the qualifier "partial" to refer to its motion. See D. 64 at 6, 23. In addition to their Chapter 93A and 93 and conversion claims (Counts V, IX and X), the Espinosas' memorandum only analyzes their FDCPA claims under 15 U.S.C. § 1692f, corresponding to Counts I, IV and VI. Accordingly, the Court construed the Espinosas' motion as one for partial summary judgment against Champion, Metcalf and JAU on Counts I, IV, V, VI, IX and X only.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The Court views the record "in the light most favorable to the non-moving part[y]" and draws all reasonable inferences in the nonmovant's favor. Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008). The nonmovant, however, "may not rely on conclusory allegations, improbable inferences, or unsupported speculation" to defeat a motion for summary judgment, "but must, instead, 'set forth specific facts showing that there is a genuine issue for trial.' " Id. at 53–54 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The nonmovant must offer "definite, competent evidence to defeat a properly supported motion for summary judgment." Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000).

### III. Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the Espinosas' statement of material facts, D. 65, Champion, Metcalf and JAU's' statement of material facts, D. 73, and accompanying documents.[2]

On August 21, 2006, a default judgment was entered in the Lowell District Court in favor of CACV of Colorado, LLC against Sergio Espinosa Sr. ("Senior") based on a credit card debt. D. 65 ¶¶ 13–15; D. 64-11. Senior's son Sergio Espinosa Jr. ("Junior") was fifteen years old at the time and had no relationship to the debt or the resultant judgment. D. 65 ¶¶ 18–19. On September 13, 2006, the Lowell District Court issued an execution on the judgment. D. 65 ¶ 20; D. 64-11.

---

[2] Champion, Metcalf and JAU did not file a response to the Espinosas' statement of facts as required and their own statement of facts, D. 73, does not respond to all material facts of record set forth in the Espinosas' statement of facts, D. 65. Accordingly, the Court deems admitted all material facts set forth in the Espinosas' motion which Champion, Metcalf and JAU have not controverted. Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (stating that "material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties") (quoting D. Mass. L. R. 56.1).

3

Champion purchased this judgment debt from Caddis Funding, LLC on April 15, 2019.  D. 65 ¶ 21; D. 64-8 at 35.  Champion hired Metcalf and JAU to collect the judgment.  D. 65 ¶ 23; D. 64-7 ¶ 39.  Champion, Metcalf and JAU then hired MCO and Abelli to execute the judgment.  D. 65 ¶ 24; D. 64-7 ¶ 40.  Before requesting seizure of the Mini Cooper, JAU conducted an asset search on Lexis Nexis.  D. 65 ¶¶ 26-27; D. 73 ¶ 7; D. 64-8 at 56.  This asset report listed two Mini Coopers, with one listing the only owner as a "Sergio Espinosa" with a date of birth in 1962 and the other listing the two owners living at the same Dracut address: a "Sergio Espinosa" with a date of birth in 1962 and a "Sergio Espinosa Jr." with a date of birth in 1991.  See D. 65 ¶ 27; D. 73 ¶ 7; D. 64-8 at 47–49.  Both Senior and Junior resided at the same Dracut address at this time.  D. 65 ¶ 1–2; see D. 73 ¶ 3.

MCO also conducted an asset search to verify ownership of the Mini Cooper using a separate database, LP Police.  D. 73 ¶ 8; D. 84 ¶ 8.  The LP Police search listed Senior as a registered owner of the Mini Cooper.  Id.  However, the parties dispute when the LP Police search occurred.  According to Champion, Metcalf and JAU, this search occurred prior to the Mini Cooper's seizure.  D. 73 ¶ 8.  According to the Espinosas, this search occurred five months after the Mini Cooper was seized.  D. 84 ¶ 8.

MCO hired and directed Export to seize the Mini Cooper.  D. 64-10 at 31; D. 73 ¶ 4.  On September 22, 2020, at approximately 3:30 a.m., Senior awoke to the sound of his barking dog.  D. 65 ¶ 32.  Senior went outside to find Export's employees and a uniformed and armed MCO constable seizing the Mini Cooper outside the Espinosas' Dracut home.  Id. ¶¶ 32–33, 57.  Senior, who does not speak much English, called Junior to come outside.  D. 65 ¶ 34.  Realizing that the MCO constable was seizing the Mini Cooper to collect a credit card debt owed by his father, Junior explained that the Mini Cooper belonged to Junior, not Senior.  Id. ¶ 38.  Junior went into the Mini

4

Cooper and obtained the registration for the vehicle. Id. ¶ 39; D 64-6 at 21, 85. The registration indicated that Junior is the sole owner of the Mini Cooper. D. 65 ¶ 40; D. 64-12. Junior showed the registration to the MCO constable supervising the seizure, as well as to an Export employee at the scene, explaining that he was the sole owner of the Mini Cooper and that they had no right to take his car. D. 65 ¶ 41; D 64-6 at 21–22. The Mini Cooper was towed from the Espinosas' home to the Export Towing tow yard in Medford. D. 73 ¶ 4; D. 65 ¶ 11, 65.

On September 23, 2020, Junior called JAU and spoke with Metcalf, informing them that they had taken his car and that it did not belong to Senior. D. 65 ¶ 44. On September 24, 2020, Junior emailed Michael Zola, JAU's attorney, informing him that the car belonged to Junior. Id. ¶ 50. The letter included documentation from the credit union Junior had obtained a loan from to purchase the car along with the vehicle's VIN number and instructions that Junior's ownership could be verified on the registration inside the vehicle's glove compartment. Id. ¶¶ 50–51.

On October 5, 2020, Champion, Metcalf and JAU became aware that Senior leased a vehicle from Honda Lease Trust ("Honda") after pulling a TransUnion credit report. D. 65 ¶ 58; D. 64-8 at 60–61. On October 9, 2020, Export brought the Mini Cooper back to the Espinosas' residence and immediately towed, in the presence of a uniformed and armed MCO constable, a Honda Accord from the private driveway of the property. D. 65 ¶¶ 55, 57. Honda owned the vehicle and was listed as the owner on its Massachusetts Registry of Motor Vehicles ("RMV") Certificate of Registration. D. 65 ¶ 56; D. 64-15.

On October 13, 2020, Honda's attorney advised Metcalf and JAU that this was a leased vehicle which could not be seized to satisfy a judgment. D. 65 ¶ 59; D. 64-8 at 68–69. On October 21, 2020, JAU called Junior to tell him that the Honda Accord was being released. Id. ¶ 60. Abelli instructed Export that Senior was responsible for paying all towing and storage charges associated

with the seizure of the Honda Accord. D. 65 ¶ 61. Senior and Junior drove approximately forty minutes to Export's tow yard to retrieve the vehicle. D. 65 ¶ 65. About five minutes away from the tow yard, Junior called Export to let them know they would be arriving shortly and an Export representative advised the Espinosas that they would first have to pay towing and storage fees for the vehicle. Id. ¶ 67.

According to the Espinosas, Senior wanted to retrieve the Honda Accord, but could not afford to pay the towing and storage fees that Export required, so they returned home before arriving at the tow yard. Id. ¶ 68. Defendants contend instead that Senior abandoned the vehicle upon learning of the towing and storage charges, telling Export to "keep [the Honda Accord], not my problem." See D. 73 ¶ 17; D. 64–10 at 91.

On December 30, 2020, Export had a Notice of Abandoned Vehicle issued to Senior and Honda, threatening to sell the Honda Accord if $3,253 (and continuing to accrue at $35 per day) was not paid to Export for towing and storage fees. D. 65 ¶ 76; D. 64-24. The Espinosas demanded that Metcalf and JAU return the Honda Accord in a January 5, 2021 Chapter 93A demand letter. D. 64-19 at 5. The Honda Accord remained in Export's tow yard until it was returned to the Espinosas' residence on May 1, 2021. D. 65 ¶ 70.

### IV.   Procedural History

As noted above, the portion of the motion that remains for the Court's consideration is the Espinosas' partial motion for summary judgment as to Counts I, IV, V, VI, IX and X, which the only remaining Defendants, Champion, Metcalf and JAU, oppose. The Court heard the parties on this pending motion on September 7, 2022 and took the matter under advisement. D. 90.

### V.   Discussion

### A. The Espinosas' Section 1692f Claims Against Metcalf, Champion and JAU (Counts I, IV and VI)

The Espinosas allege that Champion, Metcalf and JAU violated Section 1692f of the Fair Debt Collection Practices Act ("FDCPA") by seizing Junior's Mini Cooper and Senior's leased Honda Accord to satisfy a consumer debt incurred by Senior. D. 64 at 7–11. Section 1692f of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is a remedial statute enacted to redress "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a); Pollard v. L. Off. of Mandy L. Spaulding, 766 F.3d 98, 101 (1st Cir. 2014). A plaintiff "need not show that the debt collector acted intentionally or even caused [him] to suffer actual damages." Rocha v. Zwicker & Assocs., P.C., 474 F. Supp. 3d 388, 392 (D. Mass. 2020); Lannan v. Levy & White, 186 F. Supp. 3d 77, 91 (D. Mass. 2016).

Instead, to prevail on their claims, the Espinosas must demonstrate: (1) that they were the object of collection activity arising from consumer debt, (2) Champion, Metcalf and JAU are debt collectors as defined by the FDCPA and (3) Champion, Metcalf and JAU engaged in an act or omission prohibited by the FDCPA. See Rocha, 474 F. Supp. 3d at 393 (citation omitted). Champion, Metcalf and JAU do not dispute the first two elements of the Espinosas' claim. See D. 73 ¶ 1 (stating "[p]ursuant to a valid execution issued against Sergio Espinosa Sr., [Champion, Metcalf, and JAU] sent a letter . . . to [Abelli and MCO] with an execution requesting that MCO seize assets in the name of Sergio Espinosa, Sr."). The Espinosas must still prove that the FDCPA prohibited the seizure of the Mini Cooper and the Honda Accord.

#### 1) The FDCPA Prohibited the Seizure of Junior's Mini Cooper

The FDCPA prohibits debt collectors from "tak[ing] or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession

7

of the property claimed as collateral through an enforceable security interest," 15 U.S.C. § 1692f(6)(A), or if "the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6)(C). The consumer debt and resultant judgment purchased by Defendants was entered against Senior alone. D. 65 ¶¶ 13–15, 20; D. 64-11. Junior was the sole owner of the Mini Cooper. D. 65 ¶ 40; D. 64-12. These undisputed facts establish that Champion, Metcalf and JAU are debt collectors who seized a vehicle they had no legal right to possess. See Stagikas v. Saxon Mortg. Servs., Inc., No. 10-cv-40164-TSH, 2013 WL 5373275, at * 7 (D. Mass. Sept. 24, 2013) (concluding that the "record supports a finding that Defendant violated the FDCPA, [including] 15 U.S.C. § 1692f"); Britton v. Marcus, Errico, Emmer & Brooks, P.C., No. 18-cv-11299-IT, 2022 WL 2308934, at *8 (D. Mass. June 27, 2022) (denying summary judgment for defendant on 15 U.S.C. § 1692f claim where the court could not "on this record, conclude that [defendant] was not attempting to collect a balance that include the 18% annual interest on the delinquent common expenses"). Champion, Metcalf and JAU therefore violated 15 U.S.C.A. §§ 1692f(6)(A), (C) when they seized Junior's Mini Cooper to satisfy a judgment against Senior.

### 2) The FDCPA Prohibited the Seizure of Senior's Honda Accord

The seizure of Senior's Honda Accord also violated 15 U.S.C. §§ 1692f(6)(A), (C) where that vehicle was a leased vehicle owned not by Senior, but by Honda. Under Massachusetts law, "[a]ll property which by common law is liable to be taken on execution, may be taken and sold thereon, except as otherwise expressly provided." Mass. Gen. L. c. 235, § 31. It is "the principle of the common law . . . that no property but that in which the debtor has a legal title is liable to be taken by . . . execution." Van Ness v. Hyatt, 38 U.S. 294, 298 (1839) (holding that judgment debtor who had leased property with conditional right to purchase had no interest liable to execution). The parties do not dispute that Honda had legal title to the Honda Accord and that

8

Senior's interest in the vehicle was that of a lease. See D. 65 ¶ 56, 58; D. 64-8 at 60–61; D. 64-15; D. 75-5. Because Senior did not have legal title to the Honda Accord, this vehicle was exempt by law from being taken on execution. Champion, Metcalf and JAU therefore violated 15 U.S.C. §§ 1692f(6)(A), (C) when they seized Senior's leased Honda Accord to collect on Senior's debt.

Champion, Metcalf and JAU argue that they did not violate the FDCPA because leased vehicles are legally subject to seizure. D. 72 at 5. They claim that the Supreme Court's decision in Van Ness does not apply because the Supreme Court was applying Maryland law. Id. The Court in Van Ness, however, applied the common law, not Maryland law. See Van Ness, 38 U.S. at 294 (noting that "the rule of the common law was the law of Maryland"). Therefore, the operative question in Van Ness was whether, at common law, an equitable interest was subject to execution and the Supreme Court's answer to that question was no. See id. The Massachusetts legislature decided that the common law regarding the seizure of equitable interests would also be the law of the Commonwealth. Mass. Gen. L. c. 235, § 31; see Miller v. London, 294 Mass. 300, 304 (1936) (discussing the reach of Mass. Gen. L. c. 235, § 31). Therefore, under Massachusetts law, as under the common law, lease interests are not subject to seizure.

Champion, Metcalf and JAU's argument that leased vehicles should be treated like mortgaged property also fails. See D. 72 at 5–6. A mortgagor in the real estate context has legal title to a mortgage, which she transfers to a mortgagee in exchange for a loan. Fitch v. Fed. Hous. Fin. Agency, No. 18-cv-214-JJM, 2022 WL 684083, at *10 (D.R.I. Mar. 8, 2022) (stating that a "mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt") (quoting Black's Law Dictionary (11th ed. 2019)); see generally 59 C.J.S. Mortgages § 110 (Aug. 2022 update) (stating that a "mortgagor must, in general, have a present valid title to the estate to be encumbered or to that interest or share therein that the mortgage purports to convey,

9

and one who has no ownership interest in property has no right to mortgage it without the owner's consent"). By contrast, as explained above and this Court's prior Memorandum & Order, D. 31 at 10, Senior did not have interest in the Honda that Defendants could seize. Senior only had equitable title to the Honda Accord, that is, a right to use the Honda Accord, in exchange for monthly payments.

Champion, Metcalf and JAU further contend that there is a genuine factual dispute regarding Senior's efforts to mitigate his damages once the Honda Accord was released also fails. See D. 72 at 6. To prevail on their claim under the FDCPA, however, the Espinosas are not required to prove actual damages. See Lannan, 186 F. Supp. 3d at 91. The Espinosas only need to establish that the seizure of the Honda Accord was an act prohibited by the FDCPA. See Rocha, 474 F. Supp. 3d at 393 (stating that the only remaining issue before the court was whether a defendants' action violated the FDCPA where the parties did not dispute that the plaintiff was the object of debt collection activity or that the defendant was a debt collector as defined by the FDCPA).

       3) *Defendants Have Not Established the Elements of the Bona Fide Error Defense*

Champion, Metcalf and JAU argue that even if their actions were prohibited by the FDCPA, they are not liable because their actions resulted from a bona fide error. D. 72 at 4–5. Although the FDCPA is a strict liability statute, a debt collector may avoid liability through showing "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The defense requires that (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error and (3) "the bona fide error occurred despite procedures designed to avoid such errors." McDermott v. Marcus, Errico, Emmer

10

& Brooks, P.C., 911 F. Supp. 2d 1, 60 (D. Mass. 2012), amended in part, 969 F. Supp. 2d 74 (D. Mass. 2013), aff'd in part, rev'd in part and remanded, 775 F.3d 109 (1st Cir. 2014) (internal quotation marks and citations omitted). This bona fide error defense is an affirmative defense, as to which the debt collector has the burden of proof. Id. (internal citation omitted). While it appears that the First Circuit has not yet established a test regarding the maintenance of reasonable procedures, this Court is persuaded by the approach of courts which have required evidence of a system of redundancy or safeguards to prevent mistaken violations of the FDCPA. See Gathuru v. Credit Control Servs., Inc., 623 F. Supp. 2d 113, 122–23 (D. Mass. 2009) (holding that collection agency's reliance on a single person to add correct amount of collection costs to balance specified in collection notice was not sufficient to establish bona fide error defense to FDCPA violation resulting from agency's collection notice, which included collection fees that were not yet recoverable); In Engelen v. Erin Cap. Mgmt., LLC, 544 F. App'x 707, 709 (9th Cir. 2013) (holding that the bona fide error defense was not established because the defendant presented no evidence of "any regular redundancies designed to catch human recording errors" nor evidence of having contacted the plaintiff "before taking the serious steps of filing a [w]rit of [e]xecution and garnishing [the plaintiff's] wages'); Webster v. ACB Receivables Mgmt., Inc., 15 F. Supp. 3d 619, 629 (D. Md. 2014) (rejecting the bona fide error defense because the debt collector "failed to present any evidence of redundancy or safeguards in its procedures to prevent the mistaken violation of the FDCPA by its employees").

Champion, Metcalf and JAU have not established the elements of the bona fide error defense for either vehicle seizure. With respect to the Mini Cooper, Champion, Metcalf and JAU have failed to present admissible evidence showing that the seizure and holding of the Mini Cooper for sixteen days was unintentional or resulted from a bona fide error. It is undisputed that Junior

showed the constable the registration while the vehicle was being seized, he called Metcalf the next day informing him that his agents seized the wrong vehicle and he sent an email to JAU's attorney informing him of the same along with documentation identifying Junior as the vehicle's owner. D. 65 ¶¶ 41, 44, 50. Champion, Metcalf and JAU also fail to provide evidence of procedures reasonably adapted to avoid the seizure or prolonged possession of the wrong vehicles. Prior to seizing the vehicle, Champion, Metcalf and JAU relied upon a Lexis Nexis search showing Junior as a possible owner of the Mini Cooper. See D. 65 ¶ 27; D. 78-2 at 4; D. 64-8 at 47–49. MCO and Abelli, as Champion, Metcalf and JAU's agents, further offer that "it is MCO's usual practice to check ownership using the LP Police system before seizing a vehicle" and that "MCO has even acquired access to an additional database in an effort to further ensure they act in good faith and do their due diligence." D. 69 at 4. Defendants, however, have not presented evidence showing redundancy or safeguards in its regular procedures to verify the information contained in these asset searches prior to taking the significant action of seizing a vehicle, such as when multiple owners with similar names appear on a report, as happened here.[3] The evidence in this regard is especially lacking considering that these asset reports sometimes contain inaccurate or outdated information. See D. 65 ¶¶ 28–29; D. 64-8 at 52; D. 64-10 at 146–148.

Champion, Metcalf and JAU have also failed to establish the elements of the bona fide error defense with respect to the Honda Accord. It is undisputed that Champion, Metcalf and JAU knew that Senior leased the vehicle prior to seizing it. See D. 65 ¶ 58; D. 64-8 at 60–61. Defendants have therefore not established that their seizure of the Honda Accord was unintentional

---

[3] The parties dispute whether MCO conducted a second, LP Police asset search prior to the Mini Cooper's seizure. See D. 73 ¶ 8; D. 84 ¶ 8. Even if this search did occur prior to the seizure, the MCO has not presented sufficient evidence that this second asset search was part of its regular procedures as a safeguard against errors in the initial search when it seized the Mini Cooper.

or due to a bona fide error.  Champion, Metcalf and JAU claim "[i]t is MCO's practice that a leased vehicle can be seized and MCO is not aware of any law that says leased vehicles cannot be seized." D.73 ¶ 6.  However, the bona fide error defense does not apply to a mistake of law.  See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 604-05 (2010) (holding "that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute").

Accordingly, the Court allows the Espinosas' motion as to Count I, IV and VI as to Champion, Metcalf and JAU.

### B.       The Espinosas' Claims Against Champion, Metcalf and JAU for Violations of Chapter 93A and 93 (Counts V and IX)

Here, the Espinosas press both c. 93A and 93 claims against the remaining Defendants. "Under Chapter 93A, an act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness"; "is immoral, unethical, oppressive, or unscrupulous"; and "causes substantial injury to consumers."  Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting PMP Assocs. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)); see Mass. Gen. L. c. 93A.  Where a defendant engages "in conduct which beyond seizure and violated the FDCPA," courts have found a basis for a c. 93A claim including the requisite "trade or commerce" to exist.  See Andrews v. South Coast Legal Services, Inc., 582 F. Supp. 2d 82, 90 (D. Mass. 2008) (describing defendant's post-seizure actions of pressuring plaintiff to pay fees to have car released and threatening to sell car at auction).

A consumer may establish that a specific collection activity violates other laws prohibiting that activity and channeling remedies for violations through Chapter 93A. Thus, the specific collection activity may violate the Massachusetts general debt collection statute ("Chapter 93") which prohibits creditors and their attorneys and assignees from collecting a debt in an "unfair,

deceptive or unreasonable manner." Mass. Gen. L. c. 93, § 49; Hanner v. Classic Auto Body, Inc., 10 Mass. App. Ct. 121, 122-23 (1980) (holding that auto repairer's illegal seizing of customer's car to satisfy debt was an unfair attempt to collect debt and violated Chapter 93A and Mass. Gen. L. c. 93, § 49). Or the collection activity may violate the Attorney General's regulations established to define specific collection practices of creditors as unfair or deceptive. See Mass. Gen. L. c. 93A § 2(c); 940 C.M.R. § 7.07(18) ("[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through a court order or an enforceable security interest . . ." or if "the property is otherwise exempt by law from such dispossession or disablement"); 940 C.M.R. § 7.07(19) ("[t]aking possession of or selling upon execution property that is exempt from seizure on execution"). When regulations define such acts or practices, evidence showing "violations [of the Attorney General's regulations] qualify as unfair or deceptive acts" as a matter of law. Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 504 (2011). These regulations define "creditor" as "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor." 940 C.M.R. § 7.03.

The Espinosas argue that Champion, Metcalf and JAU violated Chapter 93A, Chapter 93, and the related regulations because they knowingly seized both vehicles without a present right to possess them, they continued to retain Junior's Mini Cooper as a bargaining tool, and they demanded that Senior pay Export's towing and storage fees for both vehicles. D. 64 at 13. Champion, Metcalf and JAU respond that they made diligent asset searches showing that Senior was a registered owner of both vehicles. D. 72 at 7; D. 77 at 4.

       1) *Champion, Metcalf and JAU Violated Chapter 93A and Chapter 93*

As discussed above, there is no dispute that Champion, Metcalf and JAU are debt collectors engaged in trade or commerce. As with the FDCPA violation, seizing the Mini Cooper and Honda Accord were violations of the applicable regulations, therefore qualifying as unfair or deceptive acts as a matter of law. See Casavant, 460 Mass at 504; Mass. Gen. L. c. 93, § 49; 940 C.M.R. § 7.07(18); 940 C.M.R. § 7.07(19). There is also no dispute that Senior and Junior both suffered substantial injury as Champion, Metcalf and JAU retained control of the Mini Cooper for over two weeks and of the Honda Accord for several months.[4] See D. 65 ¶¶ 32, 55, 70. These facts, at minimum, establish that for a substantial period of time, Champion, Metcalf and JAU retained possession of both vehicles which they had no present right to possess in plain violation of the Attorney General's violations, Chapter 93 and Chapter 93A.

Accordingly, the Court allows the Espinosas' motion as to Count V and IX as to Champion, Metcalf and JAU.

### C. The Espinosas' Conversion Claim Against Metcalf, JAU and Champion (Count X)

To establish a claim for conversion, a plaintiff must prove that the defendant "exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment." In re Hilson, 448 Mass. 603, 611 (2007) (citation omitted). "It is no defense to conversion for defendant to claim that he acted in good faith, reasonably believing

---

[4] The parties dispute whether Senior, upon the Honda Accord's release, abandoned the vehicle at the tow yard or returned home before arriving at the tow yard because he could not afford to pay the fees that Export demanded for its release. See D. 65 ¶ 68; D. 73 ¶ 17; D. 67-5 at 90-91. It is undisputed, however, that Senior demanded that Metcalf and JAU return the Honda Accord in a January 5, 2021 Chapter 93A demand letter. See D. 64-19 at 5. Defendants did not return the Honda Accord until May 1, 2021, several months after receiving this letter. D. 65 ¶ 70. Therefore, it is undisputed that Defendants remained in possession of the Honda Accord with the knowledge that Senior had not abandoned the vehicle for several months.

that he had a legal right to possession of the goods." Kelley v. LaForce, 288 F.3d 1, 12 (1st Cir. 2002) (applying Massachusetts law).

Here, the Espinosas have established the elements of conversion against Champion, Metcalf and JAU. It is undisputed that Defendants seized and held the Mini Cooper for over two weeks and the Honda Accord for several months. See D. 65 ¶¶ 32, 55, 70. Junior showed his Mini Cooper registration to the constable and the Export tow driver on the scene while the vehicle was being seized, he called Metcalf the next day informing him that his agents seized the wrong vehicle and he sent an email to JAU's attorney informing him of the same along with documentation identifying Junior as the vehicle's owner. D. 65 ¶¶ 41, 44, 50. Prior to the Honda Accord's seizure, Champion, Metcalf and JAU knew that Senior leased it. D. 65 ¶ 58; D. 64-8 at 60–61. Defendants have not presented any evidence to dispute Junior's ownership of the Mini Cooper or Senior's right to possess the Honda Accord. Defendants have also not identified any case law or statute providing them with the legal right to hold the vehicles for the extended period that they did. To the extent that Defendants argue that they reasonably believed that they had a legal right to possess either vehicle, the law is clear—good faith is no defense to conversion. See Kelley, 288 F.3d at 12. For these reasons, the Espinosas have established the elements of conversion against Champion, Metcalf and JAU.

Accordingly, the Court allows the Espinosas' motion as to Count X as to Champion, Metcalf and JAU.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Espinosas' motion for partial summary judgment, D. 63, as to Counts I, IV, V, VI, IX and X, as to Defendants Champion, Metcalf and JAU and DENIES it as moot as to Defendants Abelli and MCO. Given this ruling, the Court will

soon inquire of the Espinosas about whether they seek to pursue Counts II, III, VII and VIII against Champion, Metcalf and JAU or, if, instead, they seek a determination of damages as to Counts I, IV, V, VI, IX and X.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge